STATE, Plaintiff in error, v. SCHALLER,
Defendant in error.

*No. State 176 (1974). Submitted under sec. (Rule) 251.54*
*September 9, 1975.—Decided September 30, 1975.*
(Also reported in 233 N. W. 2d 416.)

For the plaintiff in error the cause was submitted on the briefs of *Victor A. Miller,* attorney general, *Bronson C. La Follette,* attorney general, and *James H. McDermott,* assistant attorney general.

For the defendant in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender.

HANLEY, J. The sole issue presented for review is whether a probationer confined in a county jail as a condition of probation may be convicted of escape under sec. 946.42, Stats.

The plaintiff in error, the state, asserts that the qualifications embodied by the last sentence of the definition of "custody" in sec. 946.42 (5) (b), Stats., do not negate the applicability of the prior sentences. We do not agree. While agreeing with the conclusion that these subunits are not necessarily mutually exclusive, the facts of defendant Schaller's elopement do fall within an exception to the "custody" required by the statute. This result is reached by virtue of two important rules of statutory construction. First, apparently conflicting provisions of a statute are to be construed so as to harmonize, and thus give effect to the leading idea behind the statute. *State v. Gould* (1973), 56 Wis. 2d 808, 812, 202 N. W. 2d 903. Second, penal statutes are to be strictly construed in favor of the accused. *State ex rel. Gaynon v. Krueger* (1966), 31 Wis. 2d 609, 619, 143 N. W. 2d 437.

The legislature chose to restrict "custody" by definition, rather than import the usage of its general meaning. Such a legally defined term must be given effect. *See: Prue v. State* (1974), 63 Wis. 2d 109, 116, 216 N. W. 2d 43. Within the framework of such definition, a distinction is drawn, although "without limitation" between

"actual custody" of an institution, peace officer or institutional guard and "constructive custody" of prisoners outside the institution. Black's, *Law Dictionary*, p. 460, in considering "custody" offers further explanation of the two terms: The former may be "actual imprisonment or physical detention" while the latter is in the nature of "mere power, legal or physical, of imprisoning." "Custody" under certain circumstances is further developed, especially that custody arising under sec. 973.10, Stats.:

"(1) A sentence of probation shall have the effect of placing the defendant in the custody of the department and shall subject him to the control of the department under conditions set by the court and rules and regulations established by the department for the supervision of probationers and parolees."

Only "actual custody" of probationers under the three circumstances of sec. 946.42 (5), Stats., none of which are claimed to apply here, constitutes the "custody" contemplated as a predicate to an escape.

Defendant, as a probationer under sec. 973.09 (4), Stats., was within the general custody of the H&SS department. The recent case of *Prue v. State, supra*, reiterated that incarceration as a condition of probation is not a sentence and does not transform probation into a sentence. These propositions do not, however, direct the conclusion that Schaller's conformity to the custody of one caretaker automatically precludes the possibility of his being in custody to another.

Apparently, the trial court concluded that the "custody" provisions were mutually exclusive. Nothing within the statutory language directs this interpretation. Such a construction could lead to absurd applications which is to be avoided. *State v. Gould, supra.* The most obvious example would occur at an escape of a probationer after a lawful arrest for the commission of a separate crime. Sec. 946.42 (1) (a) and (2) (a), Stats.

*See: Dobs v. State* (1970), 47 Wis. 2d 20, 176 N. W. 2d 289. It would be unreasonable to suggest that the dual "custody" prevents prosecution for such an escape.

In the instant case the dual "custody" arose from the same occurrence, *i.e.*, the incarceration as a condition of probation. In this situation, there is justification for assuming that only one custody is operative in determining whether an escape occurred. This decision must be made on the basis of the statutes in question. The escape statute (ch. 696, Laws of 1955) antedates the statute allowing incarceration as a condition of probation (ch. 394, Laws of 1965). It is quite possible that the present situation was not within the contemplation of the legislature since no accompanying legislative history shows a known interaction between the two provisions. There are other related statutes that act as a guide and there is the intent of the legislature that is disclosed by the language of the statues and their context and subject matter. Such intent may be considered in construing penal legislation. *State ex rel. Gutbrod v. Wolke* (1971), 49 Wis. 2d 736, 183 N. W. 2d 161.

The county sheriff has the statutory authority of custody of those persons confined to the county jail:

"59.23 **Sheriff; duties.** The sheriff shall:
"(1) Take the charge and custody of the jail maintained by his county and the persons therein, and keep them himself or by his deputy or jailer."

Confinement as an aspect of probation may be made for many reasons. Incarceration during nonworking hours may be for the protection of society. It may be imposed to remove the probationer from unhealthy influences or to reinstitute structure to his life. Finally, it may be a taste of the more permanent incarceration that is potential from uncorrected behavior. These purposes can be accomplished by placing the probationer in the hands of the sheriff, who is authorized to impose actual imprisonment and physical detention, the "actual cus-

tody" of an institution and institutional officer in sec. 946.42 (5) (b), Stats. If this intent of the legislature cannot readily be seen within the above structure, it is at least demonstrated by the last sentence of the statute allowing incarceration in probation:

"973.09 . . . (4) . . . While confined pursuant to this subsection he shall be subject to all the rules of the jail and the discipline of the sheriff."

The sheriff's custody is co-extensive with the confinement of the person within the jail. Denying dual custody under such circumstances would result in an unreasonable application of the statute. A probationer might escape from the confines of the jail rather than wait to abscond during the release period. Such action would properly be prosecuted as an escape under sec. 946.42, Stats.

However, an escape during the release period is quite another thing. A strict reading of the applicable statutes indicates no support for the proposition that the sheriff has "constructive custody" during the probationer's release periods. Dual custody arises solely during the confinement in the institution. The Huber law, sec. 56.08, Stats., with which probation incarceration is frequently confused provides a helpful analogy in this instance. Huber Law prisoners are sentenced to county jails and are in the sole custody of the sheriff. Detailed provisions specify the duties of the sheriff in relation to these prisoners. Their release time, though, is a privilege which may be restricted by the sheriff only under certain conditions. Sec. 56.08 (10). The sheriff as sole custodian still has the necessary power to impose confinement rather than allow release, and thus has the "constructive custody" referred to by sec. 946.42 (5) (b). Probationers, on the other hand, are subject to the continuing custody of the probation system. Probationers are not under sentence. There being no basis for the sheriff to deny or revoke their probation and enforce imprisonment,

"constructive custody" does not exist in the release periods. To imply such custody from the actual custody while confined would make the defendant subject to a criminal statute merely by implication, which cannot be done. *Shinners v. State ex rel. Laacke* (1935), 219 Wis. 23, 28, 261 N. W. 880.

Restriction of custody during release time solely to the department is consistent with the legislative intent that provided incarceration as an aspect of the probation system. The probationer's performance is a matter of its particular interest and is a jurisdiction over the individual conferred by the trial court. Use of probation indicates the belief that rehabilitation can be effected by that particular system. This goal is more aptly reached by the flexibility of the revocation process where the department may consider justifying and mitigating circumstances in a delay or elopement during release and impose appropriate sanctions.

The trial of this matter apparently having proceeded upon a misconception of the applicable statutory provisions, no abuse of discretion is shown in the granting of a new trial by the circuit court. A new trial should be granted if there has been an apparent miscarriage of justice and it appears that a new trial under optimum circumstances will produce a different result. *State v. Elson* (1973), 60 Wis. 2d 54, 69, 208 N. W. 2d 363.

*By the Court.*—Order affirmed.