DAVID A. SHUDLICK, District Attorney Monroe County
You have requested my opinion as to whether a county jail policy may prohibit prisoners sentenced under the Huber Law, section 56.08, Stats., from working in business establishments that dispense alcoholic beverages. For the reasons that follow, I conclude that a sheriff's policy that precludes a prisoner from working in such an establishment would not comport with the Huber Law, though enforcement of the sheriff's policy prohibiting such persons from consuming alcoholic beverages while at that location would not violate the Huber Law.
As set forth in your request, the following circumstances prompted your inquiry:
 The Monroe County Police has a jail policy which prohibits persons who have been sentenced under the Huber Law from working in business establishments which dispense alcoholic beverages. . . . Further, it is a commonly accepted practice that the place of employment for Huber prisoners is an extension of the county jail, and that any activity of a Huber prisoner at his place of employment is subject to the same rules and regulations as an individual who is in the actual confines of the jail.
 In January, 1985, the Monroe County Circuit Court sentenced an individual to the mandatory 5-day jail sentence for *Page 114 
operating a motor vehicle while under the influence of an intoxicant, second offense. The Court further ordered that the defendant could serve his sentence under the Huber Law. However, the defendant happens to be the owner and operator of a tavern and would be working in an establishment where alcoholic beverages are sold and consumed. Therefore, pursuant to the jail policy, the defendant cannot exercise his Huber Law privileges.
The Monroe County sheriff's rules and regulations for Huber Law prisoners sentenced to the Monroe County Jail state in pertinent part that Huber prisoners "will not go into any tavern nor consume beer or intoxicating beverages." These rules also prohibit Huber prisoners from entering restaurants at any time and specify that "[f]or security purposes, [Huber prisoners] are subject to bodily search, submission to breath test for the detection of alcohol and/or drugs at any time [they] are confined in the Monroe County Jail."
The sheriff's rules do not specifically prohibit a prisoner from working in a tavern while exercising Huber Law privileges. I assume, however, that the sheriff interprets the restrictions on entering any tavern as encompassing entry for purposes of engaging in employment activities in such a place. I proceed with my opinion with this assumption in mind.
The Huber Law itself provides in relevant part:
 56.08 "Huber Law"; employment of county jail prisoners. (1) Any person sentenced to a county jail for crime, nonpayment of a fine or forfeiture, or contempt of court, may be granted the privilege of leaving the jail during necessary and reasonable hours for any of the following purposes but whenever the sheriff of the county certifies that facilities are not available, the sentencing court shall be without authority to provide that persons committed for nonpayment of a fine imposed for violation of a municipal or county ordinance may be permitted to serve their alternative jail sentence under the provisions of this section:
 (a) Seeking employment or engaging in employment training;
(b) Working at employment;
 (c) Conducting any self-employed occupation including housekeeping and attending the needs of the person's family;
(d) Attendance at an educational institution; or
(e) Medical treatment. *Page 115 
 (2) Unless such privilege is expressly granted by the court, the prisoner is sentenced to ordinary confinement. The prisoner may petition the court for such privilege at the time of sentence or thereafter, and in the discretion of the court may renew his petition. The court may withdraw the privilege at any time by order entered with or without notice.
In answering your question, I have reviewed several Wisconsin statutes in addition to the Huber Law that bear on this issue. In your request, you called attention to section 53.375, which provides in part:
 (1) Any sheriff, jailer or keeper of any prison, jail or house of correction or any other person who does any of the following with respect to a prisoner within the precincts of any prison, jail or house of correction shall be fined not more than $10,000 or imprisoned not more than 9 months or both:
 (a) Sells, gives or delivers any intoxicating liquor to the prisoner.
 (b) Wilfully permits a prisoner to have any controlled substance or intoxicating liquor.
 (c) Has within his or her possession in the prison, jail or house of correction any intoxicating liquor. with intent to sell, give or deliver the liquor to the prisoner.
 (2) Any prisoner who uses intoxicating liquor in violation of s. 53.37 (2) shall be fined not more than $10,000 or imprisoned not more than 9 months or both. . . .
. . . .
(4) In this section:
. . . .
 (b) "Precinct" means a place where any activity is conducted by the prison, jail or house of correction.
In addition, the following statutes, which concern the duties of a sheriff as well as restrictions imposed on prisoners, offer assistance in resolving the dilemma the Monroe County sheriff faces:
59.23 Sheriff; duties. The sheriff shall *Page 116 
 (1) Take the charge and custody of the jail maintained by his county and the persons therein, and keep them himself or by his deputy or jailer.
. . . .
53.37 Maintenance of jail and care of prisoners. . . .
. . . .
 (2) Neither the sheriff or other keeper of any jail nor any other person shall give, sell or deliver to any prisoner for any cause whatever any alcohol beverages unless a physician certifies in writing that the health of the prisoner requires it, in which case he may be allowed the quantity prescribed.
. . . .
 53.15 Activities off grounds. . . . [A]ll wardens and superintendents of county prisons, jails, camps and houses of correction enumerated in ch. 56, may take inmates away from the institution grounds for rehabilitative and educational activities approved by the department and under such supervision as the superintendent or warden deems necessary. While away from the institution grounds an inmate is deemed to be under the care and control of the institution in which he is an inmate and subject to its rules and discipline.
Several principles flow from these statutory provisions. First, the Legislature has codified the sheriff's long-recognized inherent authority to operate and maintain the county jail and to assume the care and custody of the jail's inmates. Sec. 59.23, Stats. See also Wisconsin Professional Police Association v.County of Dane, 106 Wis.2d 303, 310, 313, 316 N.W.2d 656 (1982);State ex rel. Kennedy v. Brunst, 26 Wis. 412, 414-15 (1870). This inherent power to control the jail and its inmates implies the power to make necessary and reasonable rules and regulations for effecting that control. Cf. sec. 53.15, Stats. (making prisoners subject to a jail's rules and regulations when prisoners are away from the institution's grounds for specified purposes).
Second, the statutes reflect a strong and longstanding concern with prisoners' use of alcoholic beverages. See secs. 53.37, 53.375, Stats. For example, section 53.375 is the latest in an unbroken line of statutes going back to 1858 that specifically prohibit prisoners *Page 117 
from consuming alcoholic beverages. See, e.g., Rev. Stats. 1858, chapter 190, sections 6-7.
Although not apparent from the Huber Law itself, that statute's antecedents also contain similar prohibitions. In 1895, the Wisconsin Legislature authorized counties to establish workhouses for confining prisoners at hard labor. 1895 Wisconsin Laws, chapter 290, codified at section 697a-k (1898). The Legislature specified that "[n]o tobacco, liquor or other intoxicating beverage shall be furnished to or used by any person committed to the workhouse during his confinement therein." 1895 Wisconsin Laws, chapter 290, section 4, codified at section 697c
(1898).[1] In 1913, the Legislature extensively amended section 697c. The 1913 amendments reinforced existing restrictions on prisoners' use of alcoholic beverages by adding the following provision:
2. . . .
. . . .
 (c) Any person who shall knowingly furnish to such convicted person, and any such convicted person who shall use any intoxicating liquors or drinks shall on conviction be punished by commitment to the county jail at hard manual labor for not less than thirty days and not more than six months.
1913 Wisconsin Laws, chapter 625, section 1[2] In 1917, the Legislature further strengthened this provision, amending it to read:
 (c) The district attorney shall cause notice to be given, as provided in sections 1554 to 1556a, inclusive, and with like effect, forbidding any person to sell, furnish or give to such convicted person any intoxicating liquors or drinks during the term of his sentence. Any person who shall *** furnish to such convicted person, and any such convicted person who shall use any intoxicating liquors or drinks shall on conviction be punished by commitment to the county jail at hard manual labor for not less than thirty days and not more than six mouths.
1917 Wisconsin Laws, chapter 30, section 1. *Page 118 
In 1919, the Legislature again revised section 697c(2). 1919 Wisconsin Laws, chapter 350, section 10. The amendment renumbered section 697c(2) as section 56.08 and provided as follows in subsection (3) of the renumbered statute:
 (3) The county jail of such county is extended to any place within the county where said work is *** provided, *** and the sheriff shall at all times have the custody of such *** prisoners. Subsection (2) of section 55.07 shall apply to such prisoners; and the district attorney shall cause notice to be given, as provided in sections 1554 to 1556a, inclusive, and with like effect, forbidding any person to sell, furnish or give to such prisoners any intoxicating liquor during the term of his sentence.
At the same time, the Legislature amended another statute relating to prisoners and alcoholic beverages.
SECTION 12. Section 4497 is amended to read:
 GIVING LIQUOR TO PRISONERS; MINGLING SEXES. Section 4497. Any sheriff, jailer or keeper of any prison or any other person who shall sell, give or deliver to any prisoner, or wilfully or negligently permit any such prisoner to have any spirituous or intoxicating *** liquor, and any prisoner who shall use such liquor,
*** in violation of subsection (2) of section 55.07, or who shall have in his possession in the precincts of any prison, with intent to sell, give or deliver the same to some prisoner, such spirituous or intoxicating liquor . . . shall be punished by fine not exceeding one hundred dollars, or by imprisonment in the county jail not less than thirty days nor more than six months.
1919 Wisconsin Laws, chapter 350, section 12.
In 1947, the Legislature substantially revised section 56.08. 1947 Wisconsin Laws, chapter 366, section 7 This revision deleted references to alcoholic beverages. In the same year, however, the Legislature consolidated, renumbered, and revised several statutory chapters relating to prisons and jails. 1947 Wisconsin Laws, chapter 519. This revision included the following provision:
 53.37 MAINTENANCE AND SANITATION OF PRISONERS: DIET; COST OF FOOD. . . .
. . . . *Page 119 
 (2) Neither the sheriff or other keeper of any jail nor any other person shall give, sell or deliver to any prisoner for any cause whatever any spirituous liquor or wine or cider or beer unless a physician certifies in writing that the health of the prisoner requires it, in which case he may be allowed the quantity prescribed.
1947 Wisconsin Laws, chapter 519, section 1. The legislation also cross-referenced section 53.37 (2) to section 346.47, 1947 Wisconsin Laws, chapter 519, section 8, which the Legislature later renumbered as section 53.375, 1955 Wisconsin Laws, chapter 696, section 183, the statute you have cited as contributing to the sheriff's dilemma.
In 1959, the Legislature again changed section 56.08 substantially. 1959 Wisconsin Laws, chapter 504, section 3. This revision repealed former section 56.08 and then recreated it in essentially the same form in which it now exists. This change also specifically designated section 56.08 as the "Huber Law."
Although the Huber Law no longer contains within its terms the alcoholic beverage restrictions included in its predecessor statutes, this recapitulation of the statute's evolution shows that concern about prisoners' access to and use of alcoholic or intoxicating beverages existed from the earliest days of the Legislature's experimentation with alternatives to then-orthodox concepts of incarceration. Moreover, in my opinion, the lack of specific alcohol-related restrictions in the current Huber Law reflects nothing more than the Legislature's recognition and elimination of statutory redundancies. As I have already noted, section 53.375 is simply the latest in a long line of statutes imposing restrictions and penalties with respect to prisoners' use of alcoholic beverages. See, e.g., Rev. Stats. 1858, chapter 190, sections 6-7. My review of these statutes persuades me that in removing alcohol-specific restrictions from the Huber Law, the Legislature removed a statutory overlap. The Legislature did not intend to diminish its concern with prisoners' use of intoxicating beverages.
In short, the history of Wisconsin statutes relating to prisoners and alcohol shows a strong, consistent intention to prevent prisoners from using alcoholic beverages while they serve their sentences.
Third, the Huber Law takes a broad, unrestricted view of the employment a Huber prisoner can pursue. Section 56.08 allows a *Page 120 
person granted Huber Law privileges to use them for (among other purposes) "[w]orking at employment," section 56.08 (1)(b), or "[c]onducting any self-employed occupation including housekeeping and attending the needs of the person's family," section 56.08 (1)(c). Neither of these provisions contains any language indicating that a sheriff or court can preclude a prisoner from pursuing any lawful occupation while exercising Huber Law privileges. Moreover, the evolution of the Huber Law shows a steady trend toward an expansive view of permissible employment for Huber prisoners. Early versions of the Huber Law granted the sheriff and court considerable discretion as to what employment a prisoner could pursue. Compare 1919 Wisconsin Laws, chapter 350, section 10:
 SECTION 10. Subsection 2 of section 697c is renumbered to be section 56.08, and amended to read:
 56.08 EMPLOYMENT FOR THE BENEFIT OF DEPENDENTS. (1) *** In any county having no workhouse *** any person, and in all other counties any female person, convicted of any offense and sentenced to imprisonment in the county jail shall be committed to hard labor. Every such prisoner shall be required to do and perform any suitable *** labor provided for by the sheriff anywhere within said county; *** but the hours of labor in farm work shall be not less than ten nor more than twelve hours, and in all other work not more than ten hours, each day.
 (2) *** At the time such sentence is imposed or at any time *** before its termination, the court sentencing such person may, upon consideration of his health and training, ability to perform labor of various kinds, and the ability of the sheriff to find and furnish various kinds of employment, direct the kind of labor at which such person shall be employed, and the nature of the care and treatment *** he shall receive during such sentence. ***
Under the current Huber Law, in contrast, neither the sheriff nor the court appears to have any power to prevent prisoners who already have jobs from continuing to engage in them when those prisoners exercise their Huber privileges.
Finally, the statutes make clear that prisoners serving Huber Law sentences, Prue v. State, 63 Wis.2d 109, 114, 216 N.W.2d 43 *Page 121 
(1974) ("[t]hose receiving Huber Law privileges are serving a sentence"), remain in the custody of the sheriff and are subject to the sheriffs rules and regulations governing the jail. Sec. 53.15, Stats.; see also sec. 946.42 (5)(b), Stats. (defining "custody" to include constructive custody). Thus, the jail's rules as a general matter follow Huber Law prisoners into their workplaces.
Granting Huber Law privileges to a person employed or self-employed in an occupation in which the prisoner would necessarily have contact with (though not consume) alcoholic beverages exposes an apparent conflict among the applicable statutes and obviously creates the dilemma your sheriff faces. Literal application of the sheriffs rules and regulations would vindicate the strong statutory policy against prisoners using alcohol. In addition, extension of the sheriff's rules into a prisoner's workplace enjoys some statutory approval. At the same time, however. the sheriffs rules could easily deny a particular class of prisoners the benefits the Huber Law clearly grants them.
In reconciling these apparent contradictions, I have considered the statutes' histories, contexts, subject matters, and purposes.State v. Excel Management Services, 111 Wis.2d 479, 487,331 N.W.2d 312 (1983). My reconciliation seeks "to achieve a reasonable construction which will effectuate the statute[s'] purpose[s]." State ex rel. Melentowich v. Klink, 108 Wis.2d 374,380, 321 N.W.2d 272 (1982). My opinion also recognizes that "statutes cannot be construed in derogation of common sense."State v. Clausen, 105 Wis.2d 231, 246, 313 N.W.2d 819 (1982). In the end, my opinion, like a court decision construing statutes, must seek statutory harmony, not aggravate apparent discord. See,e.g. Clausen, 105 Wis.2d at 244; State v. Schaller70 Wis.2d 107, 110, 233 N.W.2d 416 (1975).
My review persuades me that, for several reasons, Huber Law prisoners whose employment requires them to have contact with alcoholic beverages must be permitted to engage in their employment while exercising their Huber Law privileges so long as that employment does not require them to consume alcoholic beverages and they do not in fact consume such beverages while serving their sentences under the Huber Law. First, the Huber Law itself contains no restriction on employment in which a Huber prisoner can engage, and I discern no legislative intent to restrict Huber Law privileges to employment approved by a sheriff or a court. Compare *Page 122 
sec. 56.08 (1)(c), Stats. (conferring on Huber prisoner a right to conduct "any self-employed occupation"). Unless the prisoner's self-professed employment is illegal under some statute other than the Huber Law, a prisoner exercising Huber Law employment privileges must be allowed to engage in that employment.
Second, the statutes bearing on prisoners having contact with alcoholic beverages have as their ultimate goal preventing or minimizing the opportunity for actual consumption of alcoholic drinks by prisoners. The statutes specifically prohibit prisoners from consuming such drinks, section 53.375 (2), and other statutory restrictions on transferring alcoholic beverages to prisoners serve as a means of accomplishing that goal. In my view, preventing prisoners' use of alcoholic beverages is the end sought, and restrictions on others making transfers of alcoholic beverages to prisoners is means to that end.
Third, the sheriff has inherent authority to establish rules governing prisoners in his or her custody. In addition, a sheriff has specific statutory authority to enforce those rules against prisoners while they are away from the jail's premises but still under the sheriff's constructive custody. In effect, the sheriff's rules follow the prisoner. Thus, consistent with the prohibitions on prisoners' consumption of alcoholic beverages, a sheriff could properly monitor Huber prisoners for alcohol consumption and punish a Huber prisoner who voluntarily consumes alcohol at the prisoner's place of employment.
My opinion seeks to reconcile important competing demands. It allows Huber prisoners to pursue lawful occupations that do not require consumption of alcoholic beverages: it precludes Huber prisoners from actually consuming alcohol; and it allows the sheriff to punish prisoners who in fact consume alcoholic beverages while still in the sheriff's care and custody. Thus, my opinion permits each competing interest — the Huber Law. the Legislature's restriction on prisoners' use of alcoholic beverages, and the sheriff's inherent and statutory authority to control and discipline prisoners — to have effect and does not allow any one interest to interfere impermissibly with the others.
BCL:CGW
[1] In 1907, the Legislature eliminated the restriction in section 697c on tobacco use by prisoners. 1907 Wisconsin Laws, chapter 341.
[2] Underscoring in statutory excerpts shows material added by the Legislature: asterisks indicate material legislatively deleted. *Page 123