STATE of Wisconsin, Plaintiff-Respondent,

v.

Terry N. HOFFMAN, Defendant-Appellant.†

Court of Appeals

*No. 91-0311-CR. Submitted on briefs May 29, 1991.—Decided June 11, 1991.*

(Also reported in 472 N.W.2d 558.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles J. Blum* of *The Law Offices of Michael J. Backes* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Terry Hoffman appeals his conviction on one count of escape contrary to sec. 946.42(3)(f), Stats., and an order denying postconviction relief. Hoffman contends that the trial court erred by rejecting the definition of "custody" found in Wis J I—Criminal 1772 (Oct. 1988) in favor of a broader definition that formed part of the holding of *State v. Adams,* 152 Wis. 2d 68, 447 N.W.2d 90 (Ct. App. 1989); failing to dismiss the charge at the close of the state's evidence because the state had not established the element of custody beyond a reasonable doubt; and denying his motion for a new trial on the grounds of ineffective assistance of counsel. We conclude that the trial court properly instructed the jury that custody can be established absent proof of

physical control. As a result, we also reject Hoffman's contention that, as a matter of law, the state failed to demonstrate that he was in custody prior to his escape. Finally, we reject Hoffman's claim of ineffective assistance of counsel. The trial court's judgment and order are affirmed.

Jeffrey Rickaby, a village of Ashwaubenon police officer acting on an outstanding Nebraska warrant for Hoffman's arrest, went to Hoffman's home. Rickaby testified that "[m]y intention was to arrest Mr. Hoffman for the warrant." When he observed Hoffman, his brother and two other men in the driveway, he radioed for assistance. He waited to be joined by two other officers, and then started to walk up Hoffman's driveway. According to Rickaby's trial testimony, the following confrontation then took place:

> Mr. Hoffman confronted me in his driveway by saying, "Do you have any warrants?" or I think the quote would be, "Do you got any warrants to be here?" And at that point, I did say, yes, we do have a valid warrant from Nebraska for theft. And we will have to take you into custody. Mr. Hoffman became a little upset, turned around, and began walking away from me towards the house.
>
> Officers Manthe and McKeever were there, and I told him he would have to go to jail, to the county jail, to be specific, and that he was under arrest. He began going towards the house, at which point I got next to him and kind of cut him off, I guess, if you will, preventing him from going in the house.

Rickaby described the above conversation as taking place while Hoffman was walking up the driveway toward the attached garage. Rickaby prevented Hoffman from going in the house when the two were standing in the attached garage, by positioning himself between

755

Hoffman and the door leading to the house.[1]

Hoffman's testimony supports Rickaby's recollection that Hoffman then requested permission to get some clothes from the house. Rickaby refused permission because he was concerned that Hoffman might attempt to procure a weapon from inside the house. He agreed that Hoffman's brother could enter the house to retrieve the clothes. Hoffman and Rickaby agree that while this conversation was going on, Hoffman was "pacing back and forth," though they differ as to whether he was in the garage or in the driveway at the time. Then, in a move Rickaby classified as "similar to, I guess, a basketball pick," Hoffman's brother came between Rickaby and Hoffman, and Hoffman bolted out the garage door.

The court initially instructed the jury[2] on custody as an element of the crime of escape by merging the language of Wis J I—Criminal 1772 and the *Adams* definition of custody, as follows:

> The first element requires that the defendant was in custody. Custody means the physical control of a person by a peace officer. *A person is in custody once his ability or freedom of movement has been restricted.*

---

[1]While Hoffman and some of his witnesses disputed Rickaby's testimony that he informed Hoffman he was under arrest, Hoffman and two others agreed that at least one officer told Hoffman he had an out-of-state warrant.

[2]Hoffman's trial counsel failed to object to this instruction, and he now urges us to exercise our power of discretionary reversal in the interest of justice under sec. 752.35, Stats. Our holding, however, is not grounded on any failure to preserve the alleged error for appeal.

The emphasized language represents a portion of our holding in *Adams,* 152 Wis. 2d at 74-75, 447 N.W.2d at 93.

During deliberations, the jury questioned the court about the meaning of the term "arrest" for the purpose of the escape statute. The court then reinstructed the jury as follows:

> There are three elements required for an arrest in Wisconsin.
> First, the suspect's ability or freedom of movement is restricted.
> Second, the arresting officer intends at that time to restrain the person.
> And, third, the person under arrest believes or understands that he is in custody.

Again, this instruction is drawn from our language in *Adams,* 152 Wis. 2d at 75 n.2, 447 N.W.2d at 93 n.2 (citing *State v. Washington,* 134 Wis. 2d 108, 124-25, 396 N.W.2d 156, 163 (1986)).

Hoffman's three contentions on appeal are interrelated: The jury instruction was an improper statement of the law because it implied that a person could be in "custody" within the meaning of the escape statute without proof of physical control,[3] the court should have granted its motion to dismiss at the close of the state's

---

[3]Hoffman requests an "abuse of discretion" standard of review on this first issue, citing *State v. Pruitt,* 95 Wis. 2d 69, 80-81, 289 N.W.2d 343, 348 (Ct. App. 1980) (underlying discretionary determinations are questions of fact and questions of law). Because we conclude that his real challenge is to the propriety of our holding in *Adams,* and not to the trial court's exercise of discretion, we choose to apply a de novo standard to all issues posed. We are not bound by a trial court's conclusions of law, and we review the issue de novo. *First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

evidence because the state had not demonstrated physical control over Hoffman, and counsel was ineffective for failing to pursue his motion to dismiss a defective complaint because the complaint did not allege physical control. In short, the heart of Hoffman's allegations of error is that Wis J I—Criminal 1772 represents a proper statement of the law, and that *Adams* was wrongly decided or, in the alternative, should be confined to its facts. We reject this contention.

Hoffman argues that *Adams* conflicts with an earlier supreme court decision, *State v. Schaller,* 70 Wis. 2d 107, 111, 233 N.W.2d 416, 418 (1975) ("actual custody" is defined to mean actual imprisonment or physical detention). Hoffman is not alone in his reading of *Schaller.* The committee that prepared Wis J I—Criminal 1772 defined custody as "the physical control of a person," and then referred to *Schaller* in a footnote:

> Custody is discussed at length in *State v. Schaller* . . . where it was held that it was not escape when a person committed to the county jail during non-working hours as a condition of probation failed to return at the close of the working day. The court discussed "actual" and "constructive" custody and determined that a probationer was not in the constructive custody of the sheriff during the periods of release, and therefore his elopement did not constitute escape under § 946.42.

Wis J I—Criminal 1772 n.2 (Oct. 1988). *Schaller* did not, however, address the full scope of the term "custody" as defined in what is now sec. 946.42(1)(a), Stats.,[4] but rather decided the "sole issue" of whether a probationer

Because a de novo standard favors an appellant, Hoffman is not prejudiced by our choice.

[4]Section 946.42(5)(b), Stats. (1973), interpreted in *Schaller,*

758

confined in a county jail as a condition of probation may be convicted of escape under sec. 946.42 when he fails to return from work release. *Schaller,* 70 Wis. 2d at 110, 233 N.W.2d at 418.

The portion of the statutory "custody" definition addressed in *Schaller* was the following:

> "Custody" includes without limitation actual custody of an institution or of a peace officer or institution guard and constructive custody of prisoners temporarily outside the institution whether for the purpose of work or medical care or otherwise. Under s. 56.08(6) it means, without limitation, that of the sheriff of the county to which the prisoner was transferred after conviction. *It does not include the custody of a probationer or parolee by the department of health and social services or a probation or parole officer unless the prisoner is in actual custody after revocation of his probation or parole or to enforce discipline or to prevent him from absconding.*

*Id.* at 109, 233 N.W.2d at 417 (emphasis supplied by *Schaller*).

In *Schaller,* the state argued that the qualifications in the emphasized last sentence of the statute did not negate the applicability of the earlier quoted language. The court rejected this argument, and noted that the legislature had chosen to specifically restrict the meaning of the term "custody" *as applied to probationers* to "actual custody." *Id.* The legislature did not restrict the term "custody" as applied to those not in the category of probationers or parolees. *Schaller* does not provide guidance with respect to interpretation of the term "custody" where the legislature did not so restrict the term.

---

has become, with changes not relevant here, sec. 946.42(1)(a), Stats.

To address Hoffman's claims, we are required to decide whether sec. 946.42(1)(a), Stats., restricts the term "custody" to "actual custody" as it applies to individuals who are not probationers or parolees. The threshold question to be addressed when construing statutes is whether the language of the statute is ambiguous. *Standard Theatres v. DOT,* 118 Wis. 2d 730, 740, 349 N.W.2d 661, 667 (1984). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Id.* When a statute is clear on its face, we will not look beyond the language of the statute in applying it. *Rubi v. Paige,* 139 Wis. 2d 300, 306, 407 N.W.2d 323, 326 (Ct. App. 1987).

We conclude that sec. 946.42(1)(a), Stats., is not ambiguous. The first sentence states that " '[c]ustody' *includes without limitation* actual custody . . .." (Emphasis added.) The plain meaning of this language is that "actual custody" is a subset of the term "custody" for purposes of the statute, but does not define the entire scope of the term "custody."

Hoffman was convicted of violating sec. 946.42(3), Stats., which provides:

> A person in custody who intentionally escapes from custody under any of the following circumstances is guilty of a Class D felony:
>
> . . ..
>
> (f) Pursuant to a legal arrest as a fugitive from justice in another state.

Hoffman argues that there is a distinction between "custody" and "arrest" within the meaning of the statute, and that our decision in *Adams* confuses these terms. We disagree.

760

In *Adams,* we defined "in custody" for purposes of the escape statute as the point at which one's "ability or freedom of movement had been restricted." *Id.* at 75, 447 N.W.2d at 93. We noted that this definition was "consistent with the level of restraint required to constitute an arrest." *Id.* We then listed the three elements of an arrest in Wisconsin, which are: the suspect's ability or freedom of movement is restricted; the arresting officer intends, at that time, to restrain the person; and the person under arrest believes or understands that he is in custody. *Id.* at 75 n.2, 447 N.W.2d at 93 n.2. For our definition of arrest, we relied on *State v. Washington,* 134 Wis. 2d 108, 124–25, 396 N.W.2d 156, 163 (1986).[5]

To be guilty of a violation of sec. 946.42(3)(f), Stats., an individual must be both "in custody" and under "legal arrest." The jury was properly instructed with respect to the elements of "legal arrest" in Wisconsin, and found that Hoffman was under arrest at the time he made his escape from Rickaby.[6] Hoffman

---

[5]The *Washington* court provided a citation to other Wisconsin cases setting forth the identical principle of law: *State v. Goebel,* 103 Wis. 2d 203, 213, 307 N.W.2d 915, 920 (1981); *State v. Doyle,* 96 Wis. 2d 272, 282, 291 N.W.2d 545, 550 (1980); *Huebner v. State,* 33 Wis. 2d 505, 516–17, 147 N.W.2d 646, 651–52 (1967).

[6]This jury finding is supported by the evidence. The first element requires that the suspect's ability or freedom of movement is restricted. Rickaby stated that he physically blocked Hoffman's path into the house. Hoffman testified that he asked permission to get clothes from his house, which Rickaby denied. The United States Supreme Court recently reaffirmed that "[a]n arrest requires *either* physical force . . . *or,* where that is absent, *submission* to the assertion of authority." *California v. Hodari D.,* 59 U.S.L.W. 4335, 4336 (U.S. Apr. 23, 1991) (No. 89-1632) (emphasis in original.) A reasonable jury could determine that Hoffman's request evidenced submission to Rickaby's authority.

appears to argue now that, while he was under "legal arrest," he was not "in custody" for purposes of the escape statute. We reject this analysis. As we made clear in *Adams*,[7] an individual is, as a matter of law, "in custody" for purposes of sec. 946.42 when he is under "legal arrest," because the first element of "legal arrest" equates to our definition of "custody." A person can be "in custody" within the meaning of the statute without being under "legal arrest," *see, e.g.,* sec. 946.42(2)(b), (3)(b) through (3)(g), Stats., but a person cannot be under "legal arrest" without being "in custody." Hoffman, therefore, was both under "legal arrest" and "in custody" when he attempted to escape.

We will avoid a construction of a statute that would lead to absurd or unreasonable results. *Coca-Cola Bot-*

---

The second element requires that the arresting officer intends, at that time, to restrain the person. Rickaby testified that such was his intent while in transit to Hoffman's home, and then evidenced by his actions and conversation his continuing intent to restrain Hoffman. The third element requires that the person under arrest believes or understands that he is in custody. Rickaby testified that he told Hoffman he was under arrest, and informed him of the out-of-state warrant. Hoffman and two witnesses agree he was informed of the out-of-state warrant.

[7]We reject Hoffman's attempt to limit the application of *Adams* to those situations where an arresting officer has first made physical contact with a suspect, and afterward loses actual control over the suspect. To read *Adams* with this limitation would be to give effect to the *prior* physical contact, when the arrest inquiry is focused on the relationship between the arresting officer and the suspect at a particular point in time. "To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity. *Hodari D.,* 59 U.S.L.W. at 4336 (emphasis in original).

*tling Co. v. La Follette,* 106 Wis. 2d 162, 170, 316 N.W.2d 129, 133 (Ct. App. 1982). Here, to rule that the terms "custody" and "legal arrest" should be interpreted as Hoffman urges would lead to absurd results. After an inquiry by the fact-finder into freedom of movement, the intention of the arresting officer and the understanding of the person arrested at a particular point in time, an individual could be found to be under "legal arrest." Yet, under Hoffman's view of sec. 946.42, Stats., that individual would be free to leave the scene without being viewed as an escapee absent some further action by the arresting officer to establish "custody." We reject a reading of the escape statute that would immunize attempts to flee by a person under legal arrest.

In conclusion, we reject Hoffman's three contentions on appeal. We conclude that the trial court properly instructed the jury that a person could be in "custody" within the meaning of the escape statute without proof of physical control. The motion to dismiss at the close of the state's evidence was properly denied, because the state did not have the burden of proving physical control to establish custody. No prejudice could have resulted[8] from counsel's failure to pursue his motion to dismiss a defective complaint, because the failure to allege physical control did not render the complaint

[8]*See Strickland v. Washington,* 466 U.S. 668, 687 (1984), and *State v. Pitsch,* 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985) (to prevail on a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance was deficient *and* that the deficient performance prejudiced the defense).

defective.[9]

*By the Court.*—Judgment and order affirmed.

[9]The complaint corresponded to proofs at trial. It alleged that Rickaby told Hoffman he had "a felony warrant from Nebraska for theft, we're going to have to take you into custody." It further alleged that Rickaby prevented Hoffman from entering his home "because he was under arrest and would be going to the county jail." It detailed Hoffman's request to get clothes from the house, Rickaby's denial of that request and decision to allow Hoffman's brother to enter the home. It stated that when Hoffman's brother moved between Hoffman and Rickaby, Hoffman fled.