## CITY OF LA CROSSE POLICE & FIRE COMMISSION, Petitioner-Appellant,

v.

## LABOR & INDUSTRY REVIEW COMMISSION, Respondent. †

Court of Appeals

*No. 85–1890. Submitted on briefs January 8, 1986.—*
*Decided February 20, 1986.*
(Also· reported in 385 N.W.2d 516.)

† Petition to review granted.

For the petitioner appellant the cause was submitted on the briefs of *Patrick J. Houlihan,* city attorney, and *Kenneth R. Kratz,* assistant city attorney.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David C. Rice,* assistant attorney general.

For the respondent, Daniel J. Rusch, the cause was submitted on the brief of *James G. Birnbaum* and *Ellen M. Frantz* and *Johns & Flaherty, S.C.,* of La Crosse.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.   The City of La Crosse appeals from an order affirming a decision of the Labor and Industry Review Commission. The commission concluded that Daniel Rusch, an applicant for a position in the La Crosse police department, was physically handicapped and that the City's failure to hire him for the position was discriminatory. The dispositive issue is whether Rusch was a "handicapped individual" as defined in the

Wisconsin Fair Employment Act, sec. 111.31 to 111.37, Stats. We conclude that Rusch was not handicapped within the meaning of the law, and we therefore reverse.

At the conclusion of the City's application process, Rusch was offered employment as a police officer, subject to physical testing and examination. One of the tests administered was a "Cybex" test which is intended to measure the strength and flexibility of the flexor and extender muscles of the back. The test results compare the relative strengths and weaknesses of the subject's muscles with those of others who have taken the test over time. The City considers an "A" rating on the test to mean that an individual is "qualified for any work." Rusch received a "B" rating with the following notation: "Qualified for work with the following restrictions: 1. Back conditioning exercise program advisable before undertaking heavy labor." The City informed Rusch that he could not be hired as a police officer because of the test results.

In succeeding weeks, the La Crosse Police and Fire Commission reconsidered Rusch's application and decided not to hire him because the Cybex rating "indicated back deficiencies which possibly would not permit him to adequately perform physical duties required of a La Crosse Police Officer."

Rusch filed a handicap discrimination complaint with the Department of Industry, Labor & Human Relations. At the hearing, La Crosse Police and Fire Commission president Robert Hackner testified that the City uses the Cybex test "to determine if people have back deficiencies or . . . the possibility of back deficiencies which would prohibit them from operating properly as a police officer" and that Rusch was denied em-

ployment because of his low test rating. Rusch offered the testimony of a nurse who stated that the correlation between Cybex test results and possible future back injuries has not been proven. Rusch, at the suggestion of the City's personnel director, took the test a second time and received an "A" rating. The parties concede that Rusch is in perfect health, with no physical disability or impairment of any kind.

The commission ruled that Rusch was discriminated against because of a "perceived handicap." The ruling was based on the commission's determination that the city had declined to hire Rusch because of its belief that he had a "weak back," which the city "speculated was a predictor of future back problems [Rusch] might experience under the stress of police work."

■

Under sec. 111.32(5)(f)1, Stats. (1979),[1] an employer who refuses to hire an individual "because of handicap" is guilty of discrimination unless the handicap is "reasonably related to the individual's ability adequately to undertake the job-related responsibilities." Section 111.32(8) defines "handicapped individual" as one who has "a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work" or one who "[i]s perceived as having such an impairment."

The commission's determination that Rusch was discriminated against because of a "perceived handicap" within the meaning of the Act is a conclusion of law which we review independently. *Boynton Cab Co. v. ILHR Department,* 96 Wis.2d 396, 405, 291 N.W.2d

[1] The Act has since been revised and renumbered, and these provisions, in somewhat modified form, appear at sec. 111.321, 111.322, 111.325 and 111.34(2), Stats. (1983–84).

850, 855 (1980); *Chicago, M., St. P. & P. RR. Co. v. ILHR Dept.,* 62 Wis.2d 392, 396, 215 N.W.2d 443, 445 (1974).

A handicap within the meaning of the Act is "a mental or physical *disability* or *impairment* that a person has in addition to his or her normal limitations that makes achievement not merely difficult, but *unusually* difficult, or that limits the capacity to work." (Emphasis in original.) *American Motors Corp. v. LIRC,* 119 Wis.2d 706, 714, 350 N.W.2d 120, 124 (1984).[2] In that case the complainant, a four-foot-ten-inch woman, was rejected for employment on an automobile plant assembly line solely because of her height. The supreme court affirmed the determination that the employee was not handicapped, stating:

> We conclude that Basile's stature is not a disability or impairment that makes achievement unusually difficult or that limits her capacity to work. Although Basile's height and weight are below the norm, and may impose some limitations on her general ability to achieve and work, a person with her stature is capable of a wide range of achievements, including many that a taller and heavier person

---

[2] *American Motors* was tried prior to the enactment of sec. 111.32(8), Stats., defining "handicap." The statute, however, is simply a codification of the definition—including the notion of "perceived" handicaps—adopted by the court in several cases, notably *Chicago, M., St. P. & P. RR. Co. v. ILHR Dept.,* 62 Wis.2d at 398, 215 N.W.2d at 446, and *Dairy Equipment Co. v. ILHR Department,* 95 Wis.2d 319, 330, 290 N.W.2d 330, 334–35 (1980).

The definition used by the court in *American Motors* is, for all intents and purposes, identical to the statutory definition. *Id.,* 119 Wis.2d at 714, 350 N.W.2d at 124. The only perceptible difference is that the statute deletes the words "disability or" from the phrase "a mental or physical *disability* or *impairment"* as it appears in the prior decision.

could not do. Thus, Basile's stature does not constitute such a significant deviation from the norm that it makes achievement *unusually* difficult, or limits her capacity to work. (Emphasis in original.) *Id.* at 714, 350 N.W.2d at 124.

Rusch's "condition" as revealed by the Cybex test results—somewhat weaker-than-average back muscles—like the comparatively short stature of the employee in *American Motors,* is outside the definition of "handicap." Rusch argues, however, that he was nonetheless discriminated against because, while free from any physical impairment, the City "perceived" him as handicapped within the meaning of sec. 111.32(8), Stats., and denied him employment on that basis, as the commission determined.[3]

Under the statute, a person who has a "*physical . . . impairment* which makes achievement unusually difficult or limits the capacity to work"—or one who is perceived as having *"such an impairment"*—is considered to be handicapped. (Emphasis added.) The Cybex test, as we have said, showed only that the flexor and extender muscles in Rusch's back were comparatively weaker than those of others who have taken the test over time. As the police and fire commission president testified, the City interpreted the test results as evidence of a possible inability on Rusch's part to perform the physical tasks sometimes demanded of police officers. Here, too, we see no distinction between Rusch and the short-statured employee in *American Motors.*

---

[3] As the dissent points out, the commission designated this determination as a finding of fact. It is, however, the commission's ultimate conclusion of law: that Rusch was denied employment because of a "perceived handicap" in violation of sec. 111.32(8), Stats.

Nor do we share the view expressed in the dissent that a slightly-shorter-than-average woman suffers from an "impairment"—any more than we believe that a man in excellent health and physical condition, with, perhaps, slightly-weaker-than-average back muscles, is "impaired" within the meaning of the handicap discrimination law.

In response, Rusch contends that *Dairy Equipment, supra,* note 2, and *Brown County v. LIRC,* 124 Wis.2d 560, 369 N.W.2d 735 (1985), compel the opposite conclusion. We disagree.

In *Dairy Equipment,* the applicant had only one kidney, and he was turned down for employment—even though he was able to perform the duties of the job to the employer's satisfaction—because the employer concluded that the job would expose him to an undue risk of injury. The job carried with it the risk of falling in an area where protruding machinery presented a possible danger of perforation injuries. The employer reasoned that should the applicant fall and receive such an injury to his remaining kidney, the consequences would be unusually (and unacceptably) serious. The court held that the employee was "handicapped" because the employer perceived his physical condition as a handicap—a "perceived sensitivity to injury in the future"—which limited his capacity to work. *Dairy Equipment,* 95 Wis.2d at 330, 290 N.W.2d at 335.

In *American Motors,* the court explained its ruling in *Dairy Equipment* as follows:

> Thus, because the employee in *Dairy Equipment* had a disability or impairment (one kidney) which did not actually make achievement unusually difficult or limit the capacity to work but which the employer perceived as a handicap that limited his ca-

pacity to work, this court concluded that the employee was handicapped under the Act. This court did not hold, however, that an employer's belief that an applicant or employee is unqualified and cannot perform a particular job because of a mental or physical attribute necessarily renders that person handicapped within the meaning of the Act, or that the employer's failure to hire that person constitutes handicap discrimination.

*American Motors,* 119 Wis.2d at 716, 350 N.W.2d at 125. The *American Motors* court went on to distinguish *Dairy Equipment,* and we quote at length from the court's opinion because we believe the same considerations are applicable here.

Unlike the employee's physical condition in *Dairy Equipment,* Basile's [short] stature is not a disability or impairment. Although her stature may impose certain limitations on her ability to perform every possible job, it is not an injury, deterioration or lessening that impedes her normal functioning. Nor is her stature such a substantial deviation from the norm that it makes achievement unusually difficult or limits her capacity to work. . . . This case is therefore distinguishable from *Dairy Equipment.* In *Dairy Equipment,* the employee had a disability or impairment that did not actually make achievement unusually difficult or limit his capacity to work. However, because the employer perceived the employee's disability or impairment as limiting his capacity to work, this court held that the employee was handicapped under the Act. *Here, Basile does not even have a disability or impairment about which a perception could have been made* that the disability or impairment made achievement unusually difficult or limited her capacity to work. (Em-

phasis added.) *American Motors,* 119 Wis.2d at 716–17, 350 N.W.2d at 125.

Rusch, like the short-statured woman in *American Motors,* has no "actual impairment"—such as a single kidney, as in *Dairy Equipment,* or a ninety-seven percent loss of distance vision in each eye, as in *Brown County.* As much as may be said is that some of the muscles in Rusch's back are comparatively weak. Indeed, he concedes that he is in excellent physical condition.

The *Brown County* court itself characterized *American Motors* as holding that, "for there to be a perceived handicap, there must be an actual impairment." *Brown County,* 124 Wis.2d at 568–69, 369 N.W.2d at 739. The court footnoted that statement, however, with the seemingly contradictory comment: "*American Motors* and *Dairy Equipment* both recognized that a job applicant would also be perceived as handicapped if he had no physical limitation or condition at all but was erroneously thought by the employer to have an impairment that limited his capacity to work." *Brown County,* 124 Wis.2d at 569 n.9, 369 N.W.2d at 739.

Rusch characterizes the latter statement as a declaration of law which controls the outcome of this appeal. We disagree. The statement in *Dairy Equipment* referred to by the *Brown County* court was simply describing the holding in *Barnes v. Washington Natural Gas Co.,* 591 P.2d 461, 465 (Wash. Ct. App. 1979). The Washington Court of Appeals there ruled that the protections of that state's handicap discrimination law should extend to persons who are "only thought to have handicaps." The *Dairy Equipment* court did not adopt

the *Barnes* statement, nor did it state anywhere in the opinion that a person who had "no physical limitation or condition at all" could be considered handicapped within the meaning of the Act. In fact, *Dairy Equipment* did not involve a healthy applicant at all; he was "impaired" in that he had but one kidney, as the court itself noted in *American Motors,* 119 Wis.2d at 716, 350 N.W.2d at 125. Moreover, if, as the *Brown County* footnote asserts, *American Motors* stands for the proposition that an employee with "no physical limitation or condition at all" could still be considered handicapped if he or she were so perceived by the employer, the result of that case is difficult to understand. The employee in *American Motors* was in no way impaired. And even though she was perceived by the employer as unfit for employment because of one of her physical characteristics—her short stature—the court nonetheless held that she was *not* handicapped within the meaning of the Act.

For the commission's argument to prevail, we would have to consider *Brown County* as overruling *American Motors.* We cannot so conclude, however, for the *Brown County* court nowhere suggests that its decision was designed to have such an effect.[4]

■

*American Motors* remains intact, and we consider it to be controlling. Rusch, a healthy job applicant, was rejected by the City simply because his "physical . . . characteristic [somewhat weaker back muscles than the norm], which is not and could not be perceived as a disability or impairment, failed to meet the require-

---

[4] The concurring opinion in *Brown County* pointed out the seeming inconsistencies and suggested withdrawal of certain language in *American Motors* to clarify the matter.

ments of a particular job. . . . [He] is not handicapped within the meaning of the Act." *American Motors,* at 718, 350 N.W.2d at 126.

We conclude, therefore, that the commission's determination that Rusch was handicapped lacks a rational basis.

*By the Court.*—Order reversed.

DYKMAN, J. *(dissenting.)* The majority views this as a "weak back," not a "bad back" case. Because the difference is significant, it is necessary to examine two of LIRC's findings.

> 7. Based upon his first Cybex test score, Respondent concluded that Complainant had a weak back, which Respondent perceived as a handicap.

> 8. Between September and November, 1981 Respondent refused to place Complainant on the eligibility list for police patrolman, thereby denying him employment, because of the perceived handicap which Respondent speculated was a predictor of future back problems Complainant might experience under the stress of police work.

Reading LIRC's two findings together, it becomes evident that LIRC found that the police and fire commission viewed Rusch's "weak back" as a "predictor of future back problems." The testimony of the president of the police and fire commission supports LIRC's finding:

> THE EXAMINER: [I]f anybody gets a B rating, do you automatically exclude them?
> [P & F COMM. PRESIDENT]: We can't afford to have them around. That is our opinion and that is what we have been advised.

THE EXAMINER: Okay, so that would be your testimony?

[CITY'S ATTORNEY]: What do you mean you can't afford to have them?

[P&F COMM. PRESIDENT]: Several aspects of it, that there is a possibility and the emergency situation which might arise in both the Police and Fire Departments that they wouldn't be able to properly perform their duties and presuming the Cybex Test, as we have been told, indicates that there can be weaknesses in the back that posing in the line of duty, they may injure their back and not—will no longer be capable of performing their duties. Then immediately the City is responsible for their disability payments, and we can't afford that.

While LIRC could have found that the police and fire commission refused to hire Rusch because his back was not strong enough to permit him to perform the duties of a patrolman, it did not. Instead, it found that Rusch was not hired because the city believed he had the potential of a "bad back."[1]

A back with somewhat lesser strength than the strongest back and a back susceptible to problems are different things. The former is a variation in human

---

[1] LIRC also made findings that the police and fire commission had failed to show that Rusch's back condition was reasonably related to his ability to adequately undertake his responsibilities as a patrolman. Section 111.34(2)(a), Stats., excepts from employment discrimination liability employers otherwise guilty of employment discrimination "if the handicap is reasonably related to the individual's ability to adequately undertake the job-related responsibilities of that individual's employment. . . ." LIRC's order may be viewed as based on two theories. I see no need to examine LIRC's second theory because I conclude we should sustain LIRC's order based on its first theory.

body structure. A bad back is a handicap because LIRC could find it to be "a physical . . . impairment which . . . limits the capacity to work." Section 111.32(8)(a), Stats. Susceptibility to a bad back differs only in degree. There is no difference between discrimination because of disability and discrimination because of a likelihood of disability.

In terms of standard of review, I would accept LIRC's finding that the police and fire commission refused to hire Rusch because it perceived him as having a bad back or at least a greater potential for a bad back. Section 102.23(6), Stats. The question of law involved is whether the police and fire commission's perception fits the definition of "handicapped individual." Even LIRC's conclusion of law is subject to a deferential standard of review. *Nottelson v. ILHR Department,* 94 Wis.2d 106, 117, 287 N.W.2d 763, 768 (1980). I would defer to LIRC's determination that Rusch was handicapped because the police and fire commission perceived him as having the potential of a bad back which, if realized, would limit his capacity to work.

The only remaining question is whether LIRC erred by interpreting sec. 111.31(8)(c), Stats., so as to conflict with prior case law. *Manitowoc Co., Inc. v. Sturgeon Bay,* 122 Wis.2d 406, 415, 362 N.W.2d 432, 437 (Ct.App. 1984). The majority finds language in *Brown County v. LIRC,* 124 Wis.2d 560, 568–69, 369 N.W.2d 735, 739 (1985), seemingly contradictory, and concludes that a footnote cannot be correct:

> *American Motors* and *Dairy Equipment* both recognized that a job applicant would also be perceived as handicapped if he had no physical limitation or condition at all but was erroneously thought by the employer to have an impairment that lim-

ited his capacity to work. *Dairy Equipment,* 95 Wis.2d at 330, citing *Barnes v. Washington Natural Gas Co.,* 22 Wash. App. 576, 591 P.2d 461 (1979) (perceived handicap exists where employer erroneously believes applicant to have epilepsy); *American Motors,* 119 Wis.2d at 717. . . .

*Brown County,* at 569 n.9, 360 N.W.2d at 739.

We should attempt to reconcile the text and footnote 9 of *Brown County.* Where apparently conflicting provisions of a statute are found, we are to construe them to give effect to the leading idea behind the statute. *State v. Schaller,* 70 Wis.2d 107, 110, 233 N.W.2d 416, 418 (1975). The same should be true of opinions. Additionally, the majority's concern that *Brown County* and *American Motors* may have apparently conflicting language is answered by our rule that if decisions of the supreme court are inconsistent, we follow that court's practice of relying on its most recent pronouncement. *Bruns Volkswagen, Inc. v. DILHR,* 110 Wis.2d 319, 324, 328 N.W.2d 886, 889 (Ct.App. 1982).

The court's statement in the body of *Brown County* was: "Hence, this court in *American Motors* held that, for there to be a perceived handicap, there must be an actual impairment, which need not, in fact, be a handicap to job performance." (Footnote omitted.) *Id.* at 568–69, 360 N.W.2d at 739. By using the term "impairment," the court was recognizing the obvious—without some factor differentiating a claimant from others, discrimination cases do not arise. The court in *American Motors* held that though the claimant was impaired by her stature, the impairment did not become a handicap. The court said:

> We conclude that Basile's stature is not a disability or impairment that makes achievement un-

443

usually difficult or that limits her capacity to work. Although Basile's height and weight are below the norm, and may impose some limitations on her general ability to achieve and work, a person with her stature is capable of a wide range of achievements, including many that a taller and heavier person could not do. Thus, Basile's stature does not constitute such a significant deviation from the norm that it makes achievement *unusually* difficult, or limits her capacity to work. [Emphasis in original.]

*American Motors Corp. v. LIRC,* 119 Wis.2d 706, 714, 350 N.W.2d 120, 124 (1984).

The majority does not accept the view that a short person suffers an impairment. That conclusion is not the invention of this dissent, but a part of the court's reasoning in *American Motors.* There the court said:

[A] "handicap" is an injury, deterioration or lessening that could impede a person's normal functioning in some manner and preclude the full and normal use of one's sensory, mental or physical faculties. Thus, a handicap within the meaning of the Act is a physical or mental condition that imposes limitations on a person's ability to achieve and capacity to work beyond the normal limitations that might render a person unable to make certain achievements or perform every possible job. All persons, given their individual characteristics and capabilities, have inherent limitations on their general ability to achieve or to perform certain jobs. All persons have some mental or physical deviations from the norm. However, such inherent limitations or deviations from the norm do not automatically constitute handicaps. A handicap is a mental or physical *disability* or *impairment* that a person has in addition to his or her normal limitations that makes achievement not merely difficult, but *unusu-*

*ally* difficult, or that limits the capacity to work. [Emphasis in original.]

*Id.* at 713–14, 350 N.W.2d at 123–24.

Just as importantly, the employer in *American Motors* did not perceive short stature as a disability. The court said:

> Because Basile's stature is not a disability or impairment that makes achievement unusually difficult or that limits her capacity to work, and because AMC did not perceive her as having such a disability or impairment, we hold that she is not handicapped under the Act.

*Id.* at 708, 350 N.W.2d at 121.

We are not free to reject prior decisions of the Wisconsin Supreme Court. *State v. Olsen,* 99 Wis.2d 572, 583, 299 N.W.2d 632, 638 (Ct.App. 1980).

*American Motors* would be easier to understand had the claimant not been hired because she wore dentures, but the principle is the same: An impaired but non-handicapped person who is perceived as impaired but not handicapped may be discriminated against in employment without liability under sec. 111.32(8), Stats.

The relevant facts found by LIRC pertaining to Rusch are entirely different. Though a "bad back" is not a medical term, LIRC was entitled to find that a bad back is the sort of impairment that limits the capacity to work, and that the police and fire commission perceived a bad back to be an impairment limiting the capacity to work. The employer in *American Motors* prevailed because there was neither handicap nor perception of handicap. That case is hardly precedent

for the majority's conclusion in this case where there is no handicap, but the employer believed one existed.

I conclude that LIRC's determination is supported by credible and substantial evidence, and is not contrary to any published appellate opinions. I would therefore affirm LIRC's order.