CITY OF LA CROSSE POLICE & FIRE
COMMISSION, Petitioner-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION,
Respondent-Petitioner,

Daniel RUSCH, Petitioner.

Supreme Court

*No. 85–1890. Argued March 2, 1987.—Decided June 17, 1987.*

(Also reported in 407 N.W.2d 510.)

741

For the petitioner-appellant there were briefs by *Kenneth R. Kratz,* assistant city attorney with whom on the brief was *Patrick J. Houlihan,* city attorney and the cause was argued by *Kenneth R. Kratz.*

For the Labor and Industry Review Commission the cause was argued by *David C. Rice,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the petitioner there were briefs by *James G. Birnbaum, Ellen M. Frantz* and *Johns & Flaherty, S.C.,* La Crosse and oral argument by *James G. Birnbaum.*

DAY, J.   This is a review of a decision of the court of appeals, *La Crosse Police Comm. v. LIRC,* 129 Wis. 2d 430, 385 N.W.2d 516 (1986). The court of appeals reversed a decision and order of the circuit court of La Crosse county, Hon. Dennis G. Montabon, Circuit Judge, presiding, upholding a determination by the Labor and Industry Review Commission (Commission) that Daniel J. Rusch (Rusch) was discriminated against by the La Crosse Police and Fire

Commission (PFC), contrary to the terms of the Wisconsin Fair Employment Act, secs. 111.31–111.37, Stats. [All references in this opinion are to the 1979–1980 statutes unless otherwise indicated.] Rusch's complaint was brought in response to the PFC's decision not to hire Rusch as a police officer. The PFC's decision was based on the results of a pre-employment physical examination administered on Rusch.

The case raises three issues: (1) Could the Commission reasonably conclude that in order to be considered a "handicapped individual" within the meaning of the Wisconsin Fair Employment Act (Act), it is not necessary that an individual have an actual physical impairment, but it is sufficient if the employer merely perceives the individual as having such impairment? (2) Could the Commission reasonably conclude that a "weak back" is a disability or an impairment which an employer might perceive as being a handicap within the meaning of the Wisconsin Fair Employment Act? (3) If Rusch is handicapped within the meaning of the Wisconsin Fair Employment Act, was Rusch discriminated against based on that handicap or was the decision of the PFC proper under the exception to handicap discrimination outlined in the Act?

We conclude that, in order for the Commission to find that an individual is "handicapped" within the meaning of the Act, it is not necessary to find that the individual had an actual impairment. It is sufficient to find that the employer perceived that the individual was handicapped. We uphold the Commission's conclusion that Rusch was "handicapped" within the meaning of the Act because, although Rusch had no physical impairment, the PFC perceived that he was

impaired, and the perceived impairment would qualify as a handicap. We also conclude that the Commission could reasonably have concluded that the PFC refused to hire Rusch because it perceived him to have a "weak back," and this impairment constituted a handicap. Finally, we conclude that Rusch was discriminated against on the basis of the perceived handicap, since it is apparent that the sole reason he was denied employment was the Employer's perception he was impaired. The City of La Crosse cannot show that its action denying employment was legitimate under any statutory exception to handicap discrimination. We therefore reverse the decision of the court of appeals.

On May 14, 1981, Rusch applied for employment with the City of La Crosse as a police officer. In September, 1981, Rusch was orally offered employment as a police officer by Captain Frick of the Police Department, subject to a physical examination. He accepted the offer.

Rusch underwent a physical examination on September 18, 1981, during which he was required to perform a test of back strength on a "Cybex" machine. The Cybex machine used measures the strength and flexibility of the flexor and extensor muscles of the back. Alphabetical scores are given based on performance.[1]

---

[1] A review of the forms used at the Gundersen Clinic for recording performance on the Cybex test reveals that the assessment is divided into two parts. The first part is entitled: "Cybex II Isokinetic Dynamometer Back Strength Determination." In this part of the assessment, the individual taking the test receives scores (in the number of foot-pounds) for both flexion and extension movements at two machine settings (30° per second and

Rusch received a "B" rating with the following notation: "Qualified for any work with the following restrictions: 1. Back conditioning exercise program before undertaking heavy labor."

On September 21, 1981, the PFC personnel director recommended to the police chief that Rusch not be hired, due to his "B" rating.[2] Rusch was informed that he would not be hired because of the Cybex test results.

Rusch contacted the personnel director. At Rusch's suggestion, the personnel director contacted a

---

120° per second). Based on these scores, a determination is made as to what "quartile rating" the individual is given.

There are four quartile ratings. These correspond to the percentage of individuals that receive similar foot-pound scores. For instance, a person who scores in the first quartile for flexion movement at 30° per second scores in the top 25% of all persons tested. The quartile ratings are as follows: First (75–100%); second (50–75%); third (25–50%); and fourth (0–25%).

The second part of the assessment is entitled: "Physical Rating." These ratings give a judgment as to the candidate's qualifications for work based on the results of the first part of the assessment. A score of "A" connotes "qualified for any work." A score of "B" connotes "qualified for work with the following restrictions. . . ." A list of ten possible categories of restrictions follows. The range of possible physical rating scores is from "A" to "F."

[2]A September 21, 1981, memo from Jerome Rusch, Director of Personnel, to Chief Ray Lichtie of the La Crosse Police Department states:

"Because of the physical examination report received from the Gundersen Clinic, specifically the 'B' rating for back problems, I feel that Daniel J. Rusch should not be hired on the La Crosse Police Department.

"We have confirmed the 'B' rating with Dr. Lindesmith and he informed us that this is not the best level for a police employe."

physical therapist at the University of Wisconsin-La Crosse who was familiar with the Cybex machine. Following that conversation, the personnel director arranged for a second test to be taken. On September 28, 1981, Rusch took the Cybex test for a second time and received an "A" rating. By letter dated September 30, 1981, the PFC personnel director informed the PFC of the results of the second test. The personnel director also informed the PFC members that in a discussion with an individual at the University of Wisconsin familiar with the Cybex machine he was told that: (1) "the test has not been completely validated on some back movements" and (2) if an individual "passes" a second Cybex test after "failing" the first, the results of the first test should be disregarded.

Despite the foregoing information, on November 12, 1981, the PFC decided that Rusch would not be placed on the eligibility list for police officers because he had not successfully passed the first Cybex test.

On December 8, 1981, Rusch filed a handicap discrimination complaint with the Department of Industry, Labor and Human Relations (DILHR), charging that he was denied employment as a police officer "because of an alleged weak back disclosed by a Cybex machine." The complaint was brought pursuant to the terms of the Act, secs. 111.31–111.37, Stats.

Following an investigation, the department's investigator rendered an initial determination on January 8, 1982, finding probable cause to believe that the PFC had discriminated against Rusch because of handicap, in violation of the Act. A letter dated December 16, 1981, sent by Robert Hackner, President of the PFC, to the department investigator stated that the PFC concluded Rusch should not be hired "be-

cause the Cybex Test 'B' rating indicated back deficiencies which possibly would not permit him to adequately perform physical duties required of a La Crosse Police Officer." Efforts at conciliation between the parties were either "waived or unsuccessful," and a hearing was conducted before a department hearing examiner on January 12, 1983.

By decision dated July 19, 1983, the DILHR hearing examiner concluded, as a matter of law, that: (1) Rusch was "not handicapped within the meaning of the Act" and, (2) Rusch has "proved by a preponderence [sic] of the evidence that [City of La Crosse, PFC] violated the Wisconsin Fair Employment Act in its failure to hire complainant because of an alleged/perceived handicap." The hearing examiner ordered that the City of La Crosse hire Rusch as a police officer and that he receive back pay "to which he would have been entitled from May 1981 but for the unlawful discrimination."

On January 18, 1984, the full Commission affirmed the examiner's decision, but issued a revised opinion (included findings of fact, conclusions of law and an order) which was intended to clarify the position of the Commission.[3] The Commission conclud-

---

[3]The Commission appended a section entitled "Memorandum Opinion" to its decision. This "Memorandum Opinion" explains the Commission's intent in revising the hearing examiner's decision and provides as follows:

"This decision affirms the findings of the examiner, but has been rewritten in the interest of clarifying the position of the Commission. The Findings of Fact are self explanatory. With respect to the Conclusions of Law, we have altered Conclusion of Law #2 to state that Complainant was handicapped 'within the meaning of the Act.' Respondent Police and Fire Commission perceived Complainant to have a weak back which they concluded to be a handicap limiting Complainant's capacity to adequately under-

ed, as a matter of law, that Rusch "was at all times relevant to his complaint handicapped within the meaning of the Act in that [City of La Crosse, PFC] perceived him to be handicapped." In addition, the Commission concluded, as a matter of law, that the PFC discriminated against Rusch on the basis of handicap when it denied him employment and, therefore, violated the Fair Employment Act.

The Commission ordered that Rusch be placed on the top of the police patrolman eligibility list,[4] that he be offered "immediate hire," and that if he accepted the offer he would be entitled to all employment benefits "from the date next following the date of [the PFC's] October, 1981 official monthly meeting" until the date Rusch was "instated as a police officer." The Commission also ordered that Rusch receive "lost wages" from October, 1981, until Rusch was "instated as an officer" or declined the offer of employment. Amounts earned by Rusch during the interim period

take a police patrol officer's responsibilities. Thus, although we agree with the examiner that Complainant was, in fact, physically qualified to perform the job duties of a police officer without harm to himself or others, we find that Respondent denied him employment because of its erroneous perception of his physical capabilities. Since individuals perceived to be handicapped have been interpreted to fall under the Act's definition of handicap, we conclude that Complainant was handicapped within the meaning of the Act, by virtue of the Respondent's perception of his physical limitations. Therefore, we affirm the examiner's conclusion that Respondent discriminated against Complainant in employment on the basis of handicap, in violation of the Act."

[4]At the January 12, 1983, hearing, Robert Hackner, President of the City of La Crosse Police and Fire Commission, testified that the function of the PFC is to determine whether individuals are eligible for hiring. For the position of police officer, the PFC puts together an eligibility list, and the Police Department then makes the final hiring decision.

would operate to reduce back pay otherwise allowable. The Commission also ordered that Rusch would not be eligible for back pay during the period he was a full-time college student, from January 1, 1982, to August 6, 1982.

The PFC then commenced proceedings for judicial review of the Commission's decision in the La Crosse county circuit court, pursuant to ch. 227, Stats., on February 15, 1984. The PFC appealed from that portion of the Commission's order requiring that Rusch receive back pay, and the conclusions of law that Rusch was handicapped within the meaning of the Act and that the PFC discriminated against Rusch on the basis of being handicapped. Rusch also petitioned for review of the Commission's order excluding back pay from January 1, 1982 through August 6, 1982. The cases were consolidated. On July 10, 1985, the circuit court affirmed the Commission's decision on the merits, but remanded the case for further findings of fact concerning Rusch's eligibility for back pay during the period he was a full-time college student.

The circuit court relied on *American Motors Corp. v. LIRC,* 119 Wis. 2d 706, 712, 350 N.W.2d 120 (1984), where this court stated:

> "The decisions in *Chicago [Chicago, M. St. P. & P.R.R. Co. v. ILHR Dept.,* 62 Wis. 2d 392, 215 N.W.2d 443 (1974)] and *Dairy Equipment [Dairy Equipment Company v. ILHR Department,* 95 Wis. 2d 319, 290 N.W.2d 330 (1980)], therefore, indicate that in order to be considered handicapped within the meaning of the Act, a person must actually have a physical or mental disability that makes achievement unusually difficult or limits the ca-

pacity to work, or the person must be perceived as having such a disability."

The circuit court also cited *Bucyrus-Erie Co. v. ILHR Dept.,* 90 Wis. 2d 408, 280 N.W.2d 142 (1979), noting that this case "makes clear that a back problem may be considered an actual handicap or a perceived handicap within the meaning of the Act." The circuit court specifically affirmed the Commission's second finding of fact that Rusch was perceived to be handicapped within the meaning of the Act and the Commission's third conclusion of law that Rusch was discriminated against based upon that perceived handicap.

On October 9, 1985, the PFC filed its appeal from the order of the circuit court.[5] By decision dated February 20, 1986, the court of appeals reversed the order of the circuit court.

Relying on its interpretation of *American Motors Corp.,* the court of appeals concluded that Rusch was not a "handicapped individual" within the meaning of Act, secs. 111.31–111.37, Stats. *La Crosse Police Comm. v. LIRC,* 129 Wis. 2d at 432. In *American Motors Corp.,* a four-foot-ten-inch woman was denied employment at an automobile manufacturer's plant solely because of her height; this court concluded the complainant was not a "handicapped individual." *American Motors Corp.,* 119 Wis. 2d at 718. The court of appeals stated: "Rusch's 'condition' as revealed by the Cybex test

---

[5]In its notice of appeal filed October 9, 1985, the PFC stated that it appealed "from that part of the judgment rendered and entered in this action ... in favor of the ... Commission ... affirming the Commission's determination that Mr. Rusch was discriminated against by the La Crosse Police and Fire Commission on the basis of a perceived handicap."

751

results—somewhat weaker-than-average back muscles—like the comparatively short stature of the employee in *American Motors,* is outside the definition of 'handicap.'" *La Crosse Police Comm.,* 129 Wis. 2d at 435.

The court of appeals looked to sec. 111.32(8), Stats., (1983–1984), which provides:

> "111.32 **Definitions.** When used in this subchapter: ... (8) 'Handicapped individual' means an individual who:
>
> "(a) Has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work;
>
> "(b) Has a record of such an impairment; or
>
> "(c) Is perceived as having such an impairment."

The court of appeals apparently construed the statute as requiring *actual impairment* before an individual could be characterized as handicapped for purposes of the Act. *Id.* at 438. It was noted that the Cybex test did not show actual impairment, but "only that the flexor and extender muscles in Rusch's back were comparatively weaker than those of others who have taken the test over time." *Id.* at 435.

The court of appeals also discussed two related cases cited by Rusch, *Dairy Equipment* and *Brown County v. LIRC,* 124 Wis. 2d 560, 369 N.W.2d 735 (1985), finding that they both supported the proposition that, to find a perceived handicap, actual impairment was necessary.

The court of appeals focused on two statements made by this court in *Brown County,* which, according to the court of appeals, were "seemingly contradictory." 129 Wis. 2d at 438. In *Brown County,* this court

characterized *American Motors Corp.* as holding that "for there to be a perceived handicap, there must be an actual impairment." *Brown County,* 124 Wis. 2d at 568–569. A footnote to that statement added the following: "*American Motors* and *Dairy Equipment* both recognized that a job applicant would also be perceived as handicapped if he had no physical limitation or condition at all but was erroneously thought by the employer to have an impairment that limited his capacity to work." *Id.* at 569, n. 9. The court of appeals found the above-quoted language irreconcilable with *American Motors Corp.* However, the court of appeals found that *American Motors Corp.* had not been overruled and that it was, therefore, controlling. 129 Wis. 2d at 439. Since it was concluded that the Commission's determination that Rusch was handicapped lacked a rational basis, the court of appeals reversed the order of the trial court. Both the Commission and Rusch petitioned this court for review of the court of appeals' decision, and the petitions were granted on June 10, 1986.

Rusch's original complaint was filed with the Equal Rights Division of DILHR on December 3, 1981. We therefore employ, for purposes of our review, the statutes in effect at the time of that filing.

This review was brought pursuant to ch. 227, Stats. In reviewing an administrative agency's order, an appellate court's scope of review is identical to that of the circuit court. *Boynton Cab Co. v. ILHR Dept.,* 96 Wis. 2d 396, 405, 291 N.W.2d 850 (1980).

The scope of review in cases arising under ch. 227, Stats., is set forth in sec. 227.20, Stats. Section 227.20(6), deals with review of findings of fact, and provides:

"**227.20 Scope of Review.** ... (6) If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record."

Review of matters of law is dealt with in sec. 227.20(5) Stats., which provides:

"The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law."

The stated policy of the Act is "to encourage and foster to the fullest extent practicable the employment of all properly qualified persons regardless of their age, race, creed, color, handicap, sex, national origin or ancestry." Section 111.31(3), Stats. In keeping with this policy, sec. 111.32(5), Stats., specifically makes it "unlawful for any employer, labor organization, licensing agency or person to discriminate against any employe or any applicant for employment or licensing."

Section 111.32(5)(a), Stats., defines discrimination to include discrimination because of handicap. Section 111.32(5)(f), provides in part:

"**111.32 Definitions.** ... (5) ... (f) It is discrimination because of handicap:

"1. For an employer, labor organization, licensing agency or other person to refuse to hire, employ, admit or license, or to bar or to terminate from employment, membership or licensure any individual, or to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment unless such handicap is reasonably related to the individual's ability adequately to undertake the job-related responsibilities of that individual's employment, membership of licensure."

The matters of proof in a handicap discrimination case arising under the Act, secs. 111.31–111.37, Stats., (1979–1980), were recently summarized by this court:

"First, there must be proof that the complainant is handicapped within the meaning of the Fair Employment Act. The burden of proving a handicap is on the complainant. Second, the complainant must establish that the employer's discrimination was based on the handicap. The burden then shifts to the employer to establish, if it can, that its alleged discrimination was permissible under sec. 111.32(5)(f), Stats. (1979–80), which allows an employer to refuse to hire a handicapped applicant if 'such handicap is reasonably related to the individual's ability adequately to undertake the job-related responsibilities of that individual's employment.' ..." *Brown County,* 124 Wis. 2d at 564–565, n. 5 (citations omitted).

The first question presented is whether Rush has met the burden of proving that he is handicapped within the meaning of the Act. Whether Rusch was "handicapped" presents a question of law. *American Motors Corp.,* 119 Wis. 2d at 710. We determine

whether there is a rational basis for the Commission's conclusion that Rusch was handicapped. *Brown County,* 124 Wis. 2d at 570.

At the time Rusch filed his complaint, the Act contained no definition of a "handicapped individual." This definition was later added by the legislature, ch. 334, Laws of 1981, effective August 4, 1982. The definition is codified at sec. 111.32(8), Stats., which provides:

> "**111.32 Definitions.** ... (8) 'Handicapped individual' means an individual who:
>
> "(a)  Has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work;
>
> "(b)  Has a record of such an impairment; or
>
> "(c)  Is perceived as having such an impairment."

Of particular relevance to the present case is sec. 111.32(8)(c), Stats., which provides that an individual who is *perceived* as having a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work fits the definition of a handicapped individual. This court noted in *American Motors Corp.* that the legislative history of sec. 111.32(8), revealed that the statutory definition of "handicapped individual" essentially codified the definitions employed by this court in prior cases. 119 Wis. 2d at 712, n. 4.

The City of La Crosse PFC argues to this court that in order to be considered a "handicapped individual" within the meaning of the Act, the individual must have some actual physical impairment, i.e., there must exist "*some* actual impairment for there to be a perceived handicap situation."

The City analogizes the present case to *American Motors Corp.,* in which this court held that the complainant was not handicapped based on the fact that she was not hired because she was perceived as being too short to adequately perform the job. The City points to *Dairy Equipment, Chicago,* and *Brown County* as cases supporting the proposition that actual impairment is required for a finding that an individual is handicapped.

The Commission and Rusch argue that an individual can be perceived to be handicapped without having an actual impairment. Reliance is placed on the same line of cases cited by the City of La Crosse PFC.

The parties disagree over the definition of handicapped individual, especially with respect to perception of impairment, dealt with in the relevant decisions emanating from this court. Confusion concerning the definition of the term "handicapped" may be the result of the dissenting opinion in *American Motors* and the concurring opinion in *Brown County,* both by the same author.

In *Brown County,* the writer of the concurrence in this case renewed her objection to the majority's decision in *American Motors,* and stated that her objection to *American Motors* was "the language of *American Motors,* which appears to limit a perceived handicap to a situation in which there is present an actual impairment...." *Brown County,* 124 Wis. at 575. Footnote three in that same concurring opinion repeats the argument: "The majority opinion in this case attempts to avoid the pitfall of *American Motors,* in which the majority described actual impairment or disability—*which must exist* to allow the employer to

perceive the person as handicapped...." *Id.* at 575, n. 3. (Emphasis added.)

*American Motors* actually reached the opposite conclusion. Not only did this court cite with approval *Barnes v. Washington Natural Gas Co.,* 22 Wash. App. 576, 591 P.2d 461 (1979), a case in which the employer believed that the employee had an impairment (epilepsy) which the employee did not in fact have, this court further stated: "The decisions in *Chicago* and *Dairy Equipment* therefore indicate that in order to be considered handicapped within the meaning of the Act, a person must actually have a physical or mental disability ... *or the person must be perceived as having such a disability." American Motors,* 119 Wis. 2d at 712. (Emphasis added.) Furthermore, in *Brown County,* this Court again specifically said: *"American Motors* and *Dairy Equipment* both recognized that a job applicant would also be perceived as handicapped if he had no physical limitation or condition at all but was erroneously thought by the employer to have an impairment that limited his capacity to work." 124 Wis. 2d 560, 569, n. 9.

The writer of the concurrence in the instant case apparently recognizes that her objection as stated in her concurrence in *Brown County* was incorrect by now stating that *American Motors* says "[a] handicapped individual under the statute includes only an individual who has an impairment *or* who the employer believes has an impairment...." (P. 775, concurrence.) (Emphasis added.)

The writer of the concurrence now concludes that this court is in agreement concerning what was outlined in *American Motors.* We emphasize, however, that the majority of this court does not agree with the restatement of *American Motors* set out by the writer

758

of the concurrence. The writer misconstrues *American Motors*, asserting that it added a separate ingredient to the definition of impairment. She states that *American Motors* required that in order for a condition to constitute a real or perceived impairment, the condition must be "in addition to normal limitations" and "a significant deviation from the norm," and that the instant case eliminates both items from consideration. (Slip opinion at page 775.)

It is simply incorrect to state that *American Motors* required that the impairment be a significant deviation from the norm. *American Motors* does not require such a condition. The important principle established in *American Motors* was its determination of what constitutes an "impairment" for purpose of the statute. This court recognized "[a]ll persons, given their individual characteristics and capabilities, have inherent limitations on their general ability to achieve or to perform certain jobs. All persons have some mental or physical deviations from the norm." *American Motors*, 119 Wis. 2d at 713. We concluded that "such inherent limitations or deviations from the norm do not automatically constitute handicaps." *Id.* That is not, as the concurring opinion asserts, the same as saying that a significant deviation from the norm is required to establish an "impairment" for purposes of the statute.

What constitutes an "impairment" for purposes of the statute? In *American Motors*, this court cited *Webster's Third New International Dictionary*, 1131 (1961), which defined "impairment" as "'the act of impairing or the state of being impaired: INJURY ...: DETERIORATION ... LESSENING' ... 'Impair' is defined as '... Deterioration, injury.'" *Id.* Thus, the

element of "impairment" is satisfied by showing either an actual lessening, deterioration, or damage to a normal bodily function or bodily condition, including the absence of such function or condition, or by showing that the condition perceived by the employer would constitute an actual impairment if it in fact did exist.

Because the concurring opinion may cause confusion as to this court's interpretation of Wisconsin's Fair Employment Act, a review of past cases and the analytical framework that has emerged from them is in order.

This court, since 1979, has been called upon five times to interpret the definition of "handicapped individual" now found in sec. 111.32(8), Stats.

1) *Bucyrus-Erie* involved an individual with congenital back defects.

2) *Dairy Equipment* involved an individual with only one kidney.

3) *American Motors* involved an individual four feet, ten inches tall.

4) *Brown County* involved an individual with 20/400 eyesight.

5) The instant case involves an individual with a perceived weak back projected to have further back problems.

In each of these cases, the burden was on the individual alleging the handicap to establish that a particular physical condition constituted a handicap within the meaning of the Fair Employment Act.

From these cases has emerged a two-step process of analysis in determining whether the individual has established a handicap within the meaning of the statute so as to place the burden on the employer to show a permissible discrimination.

First, is there a real or perceived impairment? Second, if so, is the impairment such that it either actually makes or is perceived as making achievement unusually difficult or limits the capacity to work.

The first step in the analytical process requires determining whether an impairment, real or perceived, exists. As stated above, an impairment for purposes of the statute is a real or perceived lessening or deterioration or damage to a normal bodily function or bodily condition, or the absence of such bodily function or such bodily condition.

If the individual satisfies the first step, then he or she must establish that the impairment either actually makes or is perceived as making "achievement unusually difficult or limits the capacity to work." Section 111.32(8)(a), Stats. The disjunctive "or" in the statute makes it clear that one of two conditions must be met to satisfy this second step. Either the claimant must show that the real or perceived impairment makes achievement unusually difficult, or the claimant must show that the real or perceived impairment limits the capacity to work. An employer's perception of either satisfies this element as well.

What is meant by "makes achievement unusually difficult?" The determination rests not with respect to a particular job, but rather to a substantial limitation on life's normal functions or a substantial limitation on a major life activity. *See, School Bd. of Nassau County, Fla. v. Arline,* 107 S. Ct. 1123, 1129 (1987).

What is meant by "limits the capacity to work?" Obviously it must mean something other than "makes achievement unusually difficult." *Brown County* answers the question: "limits the capacity to work" refers to the particular job in question. In *Brown County,* this court said: "[T]he evidence is clear that

Brown county perceived the impairment as one that limited Toonen's capacity to work at the specific job for which he applied .... that perception ... is sufficient to establish that Toonen was 'handicapped' ...." 124 Wis. 2d at 572.

In summary, the person alleging that he or she is handicapped under the Act must establish first, an actual or perceived impairment, then, second, that such condition either actually makes or is perceived as making achievement unusually difficult or limits the capacity to work.

All of this court's decided cases fit within that analytical framework, and, contrary to the assertion of the concurring opinion, are readily reconcilable with each other.

*Bucyrus-Erie:* The claimant had three congenital back defects. The first step was satisfied: three congenital back defects constitute an actual impairment. The second step was also satisfied: the individual established that the employer perceived that the impairment limited his ability to work as a welder. Inasmuch as the employer then failed to meet its burden of showing the individual could not have safely and efficiently performed the job applied for, this court affirmed the finding of unlawful discrimination.

*Dairy Equipment:* The claimant had only one kidney. The first step was satisfied: the absence of one kidney constituted an actual impairment. The second step was also satisfied: although the absence of one kidney did not actually make normal achievement or work unusually difficult, the employer perceived that the absence of a kidney exposed the claimant to an undue risk of injury to his remaining kidney. The

claimant was therefore entitled to the protections of the law.

*American Motors:* The individual was four feet, ten inches tall. The first step was not satisfied: actual stature of four feet ten inches did not constitute a deterioration, a lessening, or damage to a normal bodily function or bodily condition and was therefore not an impairment for purposes of the statute. Neither did the claimant allege that her employer perceived a condition that did not in fact exist, as was the fact in the instant case. There was no question that the condition perceived by the employer was the actual condition of four feet, ten inches. Thus, the claimant failed to establish the existence of an impairment.

*Brown County:* The individual had eyesight of 20/400. This was an actual impairment. The first step was satisfied. The second step was also satisfied: although his eyesight was correctable to 20/20 thereby in actuality not making achievement unusually difficult or limiting his capacity to work, the employer perceived that his condition limited his capacity to work at the particular job. Thus, he was entitled to the protections of the statute. We remanded the case to allow the employer the opportunity under the Act to prove that its standard was reasonably related to the claimant's ability to actually perform the job.

In the instant case Rusch had no actual impairment of his back. However, the first step is satisfied because the employer perceived that Rusch had an impairment that consisted of a weak back that portended future back problems. Inasmuch as the condition that the PFC perceived would constitute an impairment if it in fact existed, the employer's perception satisfied the first step. The second step is also

satisfied; Rusch had no impairment that made achievement unusually difficult or limited his capacity to work, but the employer perceived that Rusch was limited in his capacity to perform police work. Thus, Rusch is entitled to the protections of the statute.

In the instant case, there is substantial evidence to show that Rusch was not hired because of his performance on the first Cybex test.[6] Rusch contends, and the parties appear to agree, that he is in excellent physical health. The employer here perceived, on the basis of the Cybex test result, that Rusch had an impairment which would limit his capacity to work.

Robert Hackner testified before the hearing examiner that he understood that the Cybex machine would "determine if people have back deficiencies or have the possibility of future back deficiencies which would prohibit them from operating properly as a police officer." He also testified that the PFC could not afford to have individuals receiving a "B" rating since:

> "There is a possibility and the emergency situation which might arise in both the Police and Fire Departments that they wouldn't be able to properly perform their duties and presuming the Cybex test, as we have been told, indicates that there can

---

[6]At the January 12, 1983, hearing before the Department Hearing Examiner, Robert Hackner, President of the PFC, testified as follows:

"Q. And is it true, is it not, that you did not put Daniel Rusch on the eligibility list for hire in November of '81, did you?

"A. That is correct.

"Q. And is it true, is it not, that the sole exclusive reason for your failure to do that as the fact that he had received a B rating on a Cybex Test?

"A. Yes."

be weaknesses in the back that posing in the line of duty, they may injure their back, and not—will no longer be capable of performing their duties."

It is clear that the PFC attached a good deal of significance to the results of the Cybex test. A poor result meant that the candidate was sufficiently impaired so as to limit his or her capacity to perform police duties. As a result of the first Cybex test, the PFC concluded that Rusch was physically impaired.

We conclude that there is a rational basis supporting the Commission's conclusion that Rusch was "handicapped" within the meaning of the Act. The conclusion answers the first two questions presented on this review: First, we hold that, in order to be considered a handicapped individual within the meaning of the Act, it is not necessary that an individual actually have an impairment if the employer perceives such a handicap. This confirms prior case law. Second, the back problem which the PFC thought was revealed by the result of the Cybex test is clearly within the ambit of "handicap," since substantial evidence in the record shows that the PFC treated the perceived back problems as an impairment which would limit the applicant's capacity to do work.

"Substantial evidence," for purposes of reviewing an administrative decision, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Gilbert v. Medical Examining Bd.*, 119 Wis. 2d 168, 195, 349 N.W.2d 68 (1984). We have no doubt that there is substantial evidence to support the foregoing conclusions.

■ The final issue is whether Rusch was discriminated against on the basis of the handicap. We conclude that Rusch was discriminated against on the basis of handicap since the record clearly reveals that the employer refused to hire Rusch solely because of the perceived handicap. This meets the definition of handicap discrimination set forth in sec. 111.32(5)(f), Stats. The Commission could reasonably conclude that the PFC discriminated against Rusch in its decision not to place him on the eligibility list.

The City of La Crosse PFC argues that it can justify its actions as legitimate under the terms of the statute, sec. 111.32(5)(f). It is argued that it can show that Rusch's perceived handicap is "reasonably related to the individual's ability adequately to undertake the job-related responsibilities of that individual's employment." Section 111.32(5)(f), Stats.[7]

---

[7]In its Brief to this court, the PFC argues that, assuming Rusch is "handicapped" within the meaning of the Act, the standard of rejecting applicants with "B" scores on the Cybex test bears a rational relationship to the safety obligations which are imposed upon an employer of a police department. The PFC states that although this issue was not addressed by the Court of Appeals, it must be considered if Rusch is held to be handicapped.

Although neither Rusch nor the Commission addressed this issue in their initial briefs, the Commission did take up the issue in its reply brief.

The Commission notes that under the terms of sec. 809.62(6), Stats., if the petition for review is granted, "the petitioner cannot raise or argue issues not set forth in the petition unless ordered otherwise by the supreme court." It is argued that:

"In this case, although the ... Commission properly restricted its brief to the two issues contained in the petition for review, the PFC attempts to raise and argue a third issue. That issue is whether the PFC proved that Rusch's perceived handicap was

The PFC cites the Commission's decision, Finding of Fact Number 10, which provides:

> "10. At the time of his application and consideration for employment with the City of La Crosse Police Department, the condition of Complainant's back was not a present hazard to his own safety or that of others, nor was it, to any reasonable probability, a future hazard to his own safety or that of others."

It is argued that, in using "reasonable probability," the Commission was applying the standard utilized in *Bucyrus-Erie,* which requires that an employer must establish to a reasonable probability that be-

reasonably related to his ability adequately to undertake the job-related responsibilities of a police officer."

The Commission maintains that the issue of the hiring standard is not properly before the court and that if Rusch is held to be handicapped, the matter should be remanded to the court of appeals, in accordance with *Brown County.*

We note that in the petitions for review filed by the Commission (March 7, 1986) and by Rusch (March 24, 1986), the issue of the hiring standard and Rusch's ability to perform the duties of a police officer is not raised. It is not surprising that the issues as stated in the petitions for review centered on the definition of handicap, because the court of appeals decided the case on the issue of whether Rusch was handicapped. The significant question warranting review of this case was whether an actual impairment is required to be considered handicapped within the meaning of the Act.

However, this case is brought under ch. 227, the administrative procedure act. Appellate court review in ch. 227 actions requires a complete review of the agency determination. The Court of Appeals did not engage in an extended review because it was decided Rusch was not handicapped. Since we decide that Rusch was handicapped, we proceed with the review as contemplated under ch. 227, Stats.

cause of an individual's physical condition, the employment in the position sought could be hazardous to the safety or health of the individual or to other employees or frequenters of the workplace. 90 Wis. 2d at 421. The PFC then argues that instead of applying the *Bucyrus-Erie* standard, the Court should apply the standard enunciated in *Boynton Cab.* Under *Boynton Cab,* the employer must show that the hiring standard bore a "rational relationship" to the safety obligations imposed upon the company and that the standard was not the result of an arbitrary belief lacking in objective reason or rationale. 96 Wis. 2d at 404.

The foregoing cases, *Bucyrus-Erie* and *Boynton Cab,* arose under sec. 111.32(5)(f), Stats., (1973), which provides:

> "**111.32 Definitions.** ... (5) ... (f) The prohibition against discrimination because of handicap does not apply to failure of an employer to employ or to retain as an employe any person who because of a handicap is physically or otherwise unable to efficiently perform, at the standards set by the employer, the duties required in that job...."

The PFC is arguing that they had a general rule that those who received a "B" rating on a Cybex test would not be hired. This rule, they argue, reasonably filtered out those individuals who, due to the physical condition revealed by the Cybex test results, would pose a risk to the safety and health of themselves and other police officers.

PFC argues that since the police have special safety obligations imposed on them, as do common carriers, the *Boynton Cab* rational relationship standard should be applied. It is argued that the hiring

standard bears a rational relationship to the safety obligations imposed on the PFC.

We disagree. First, the relevant statute in this case is not the statute applied in *Boynton Cab* and *Bucyrus-Erie.* Second, we have concluded that Rusch had a perceived handicap, although he had no actual impairment. There is no evidence that could show that Rusch could not adequately undertake the job-related responsibilities of a police officer.

The correct standard was stated in *Brown County,* where this court applied the 1979–1980 version of the statute. As in *Brown County,* the court of appeals here erroneously concluded that the complainant was not handicapped. The court of appeals therefore did not reach the question whether the standard set by the PFC in respect to results on the Cybex machine is not discriminatory because it is reasonably related to Rusch's ability to "actually perform the job requirements." *Brown County,* 124 Wis. 2d at 573.

We would normally remand this cause for determination of whether the PFC has met its burden in proving that Rusch is unqualified.[8] However, there is absolutely nothing in the record to support a conclusion that Rusch could not perform the duties of a police officer.

"Where the evidence is clear and convincing, this Court, or the trial court, can supply a finding of fact—missing from the agency decision—where it might be

---

[8]The Commission correctly notes that in *Brown County,* this court remanded a cause to the Court of Appeals for determination of a similar question involving an individual's qualifications for a job. *Brown County,* 124 Wis. 2d at 573.

required." *Connecticut General Life Ins. Co. v. DILHR,* 86 Wis. 2d 393, 404–405, 273 N.W.2d 206 (1979). We find as a matter of fact that Rusch was qualified to efficiently perform the duties of a police officer.

Moreover, there is no evidence showing that the PFC hiring standard, by which it rejected applicants scoring a "B" on the Cybex test, bore a rational relationship to the safety obligations which are imposed upon an employer of a police department. The PFC cites sec. 62.13(5)(d), Stats. (dealing with examinations which may be conducted on job applicants for jobs as police officers), which provides in part: "The examination, including minimum training and experience requirements, shall be job-related in compliance with appropriate validation standards and shall be subject to the approval of the board and may include tests of manual skill and physical strength." The foregoing statute does not validate the Cybex test, but merely restates the proposition that there may be physical-strength tests which are job-related.

The testimony adduced before the hearing examiner from Robert Ustby, an Occupational Health Nurse Practitioner, revealed that the Cybex machine "would show a relationship or at least a possible relationship between [a] person's possibility of having a future injury to his back." However, stated Ustby, "this has not been proven in any research studies to date." On cross-examination of Mr. Ustby the following exchange took place:

> "Q. And it is true, is it not, that as of this time, there is no scientific evidence published that draws any correlation between these objective test scores and anything related to back injuries or workmen's compensation?

"A. To the best of my knowledge that is true."

Under any test for assessing hiring standards pursuant to the Act, there is insufficient proof in this record that the Cybex machine was a reliable indicator of the adequacy of the performance of the job-related responsibilities of a police officer by job applicants.

Since ch. 227 contemplates a *de novo* review of the Commission's decision, we consider the Commission's order providing, in part, for back pay.[9] In Rusch's

[9]The Commission's Order provided:

"1. That Respondent shall cease and desist from discriminating against Complainant on the basis of handicap.

"2. That Respondent shall immediately place Complainant at the top of the police patrolman eligibility list, shall direct the hiring authority to offer Complainant immediate hire as a City of La Crosse police patrolman, and if Complainant accepts employment within ten days of such offer, shall immediately confirm his appointment.

"3. That if Complainant accepts the position, Respondent shall afford Complainant the seniority, benefits, and other privileges of employment to which he would have been entitled, but for the unlawful discrimination, from the date next following the date of Respondent's October 1981 official monthly meeting, until the date Complainant is instated as a police officer.

"4. The Complainant shall be entitled to payment of all lost wages that he otherwise would have been entitled to as a police patrolman for the period commencing in October, 1981, until he is instated .or declines employment with Respondent. Amounts earned by Complainant during the interim shall operate to reduce the backpay otherwise allowable. Additionally, Complainant will not be eligible for backpay for the period January 1, 1982 to August 6, 1982 when he was a full-time college student. Amounts received as unemployment benefits or welfare payments shall not reduce the backpay allowable but shall be withheld from

original petition for review brought in circuit court, he appealed from that portion of the Commission's order disallowing back pay from January 1, 1982 to August 6, 1982.

We treat the issue of the order prohibiting back pay during the period Rusch was a full-time college student as an issue preserved for review. *See, Omernick v. Dept. of Nat. Resources,* 100 Wis. 2d 234, 255, 301 N.W.2d 437 (1981). We find that the provisions of the Commission's order providing that Rusch be offered employment and receive seniority and other benefits are within the range of discretion delegated to it by law; we find no abuse of discretion.

However, we agree with the circuit court that the Commission's findings of fact omit reference to Rusch's attempting or not attempting to find employment while enrolled as a full-time student in order to mitigate his damages. Under sec. 111.36(3) Stats., the examiner

Complainant and immediately paid to the Unemployment Reserve Fund or, in the case of a welfare payment, to the welfare agency making the payment.

"5.   That all backpay to Complainant determined in number 4 above of this Order shall be further increased to reflect an accrual of interest at the rate of seven (7) percent per annum.

"6.   That Respondent shall within 30 days of the expiration of time within which an appeal may be taken herein, submit a compliance report detailing the specific action taken to comply with the Commission's Order. The compliance report shall be directed to the attention of Kendra DePrey, Labor and Industry Review Commission, P.O. Box 8126, Madison, Wisconsin, 53708."

"(c) shall make written findings and order such action by the respondent as will effectuate the purpose of this subchapter, with or without back pay. . . .Interim earnings or amounts earnable with reasonable diligence by the person discriminated against or subjected to unfair honesty testing shall operate to reduce back pay otherwise allowable."

This court is obliged to accord "due weight" to the "experience, technical competence, and specialized knowledge of the agency involved, as well as the discretionary authority conferred upon it." Section 227.20(10), Stats. Such deference does not allow this court to uphold an exercise of discretion which finds no support or explanation in the agency's findings of fact. Accordingly, we remand the cause to the Commission, as did the circuit court, for findings of fact on the issue of back pay during Rusch's college enrollment, January 1, 1982 to August 6, 1982.

On the basis of the foregoing, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the Labor and Industry Review Commission for proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). I agree with the majority's defining a perceived handicap under sec. 111.32(5)(f), Stats. 1983–84, as follows: In order to find an individual handicapped within the meaning of the Wisconsin Fair Employment Act, it is not necessary to find that the individual has an actual impairment. An individual is handicapped if the employer believes, albeit erroneously, that the individual has an impairment and the employer perceives that the impairment makes achievement unusually

difficult or limits the capacity to work. Majority opinion at pages 744, 765.[1]

The majority apparently concludes, and I agree, that if an employer perceives that an applicant has a back that might give him problems and perceives that back as a physical condition that would limit the applicant's capacity to do work, majority opinion at 759–760, then the applicant falls within the statutory definition of a handicapped individual.[2]

I believe this definition of perceived handicap comports with the court's pre-*American Motors* line of cases and the legislative purpose of the statute. See *Brown Co. v. LIRC,* 124 Wis. 2d 560, 574, 369 N.W.2d 735 (1985) (Abrahamson, J., concurring); *American Motors Corp. v. LIRC,* 119 Wis. 2d 706, 719, 350 N.W.2d 120 (1984) (Abrahamson, J., dissenting).

Unfortunately, the majority opinion stops just short of where I think its language and reasoning lead: to the overruling of *American Motors Corp. v.*

---

[1]"We conclude that, in order for the Commission to find that an individual is 'handicapped' within the meaning of the Act, it is not necessary to find that the individual had an actual impairment. It is sufficient to find that the employer perceived that the individual was handicapped. We uphold the Commission's conclusion that Rusch was 'handicapped' within the meaning of the Act because, although Rusch had no physical impairment, the PFC perceived that he was impaired, and the perceived impairment would qualify as a handicap." Majority opinion at pages 744–745.

"Second, the back problem which the PFC thought was revealed by the result of the Cybex test is clearly within the ambit of 'handicap,' since substantial evidence in the record shows that the PFC treated the perceived back problems as an impairment which would limit the applicant's capacity to do work." Majority opinion at page 765.

[2]Cf. *School Bd. of Nassau County, Fla. v. Arline,* 107 S. Ct. 1123, 1127 n.4, 1128, and 1129 n.10. (1987) (discussing federal statute).

*LIRC,* 119 Wis. 2d 706, 350 N.W.2d 120 (1984). The test the court announces today can, in my opinion, neither explain the result in *American Motors* nor be reconciled with the reasoning in that case.

I view *American Motors,* the court of appeals in its opinion in this case views *American Motors,* and at oral argument counsel for the Commission and the City viewed *American Motors,* as giving only certain physical characteristics (which the individual actually has or the employer believes the individual to have) handicap status. *American Motors,* 119 Wis. 2d at 713. We all read *American Motors* as saying:

A. A handicapped individual under the statute includes only an individual who has an impairment or who the employer believes has an impairment; and

B. The kind of impairment (actual or believed to exist) that can constitute a handicap under the statute is an injury, deterioration, disability or lessening that

(1) is "in addition to [the individual's] normal limitations" and is "a significant deviation from the norm," *American Motors,* 119 Wis. 2d at 713, 714, 716; and

(2) makes achievement unusually difficult or limits capacity to work or is perceived by the employer as making achievement unusually difficult or limiting the capacity to work.

The majority opinion in this case never discusses the first element of impairment above—*i.e.,* (B)(1) a physical condition which exists in addition to normal limitations and which is a significant deviation from the norm—and thus has apparently eliminated it from consideration. If the majority were to apply *American Motors* to this case, it should reason as follows using the language of *American Motors:*

"Although her stature [in this case his back] may impose certain limitations on her [his] ability to perform every possible job, it is not an injury, deterioration or lessening that impedes her [his] normal functioning. Nor is her stature [his back] such a substantial deviation from the norm that it makes achievement unusually difficult or limits her [his] capacity to work. Thus, Basile [Rusch] had no physical limitation that AMC [City] could have perceived to be a disability or impairment, let alone a disability or impairment that made achievement unusually difficult or limited her [his] capacity to work .... Here, Basile [Rusch] does not even have a disability or impairment about which a perception could have been made that the disability or impairment made achievement unusually difficult or limited her [his] capacity to work.

".... [A] slightly near-sighted person who wears glasses and who is rejected for a position requiring 20/20 uncorrected vision could contend that he or she has a disability or impairment that limits the capacity to work or that the employer perceives him or her as having a disability or impairment that limits the capacity to work. However, although [short persons or slightly near-sighted persons], like all persons, have characteristics that impose *some* limitations on their ability to do particular jobs, in neither case could one seriously argue that the person has a disability or impairment that makes achievement *unusually* difficult, or that limits the capacity to work." *American Motors,* 119 Wis. 2d 716–18. (Emphasis in the original.)

I find no proof in this record, and the majority does not hold, that either the possibility of future back

deficiencies or a Class B rating[3] or any other variation of the vague descriptions the City used for Rusch's perceived physical characteristics or condition is "in addition to his normal limitations" or is "a significant deviation from the norm." Rusch got a B rating on the basis of the Cybex test which placed him in the 50–75% percentile, that is, among the upper half of those persons taking this test. LIRC made the following finding of fact: "The Cybex Test may show the strength of an individual's flexor and extender muscles, but bears no relationship to a possible potential for back problems." This finding is amply supported in the record. Thus, under *American Motors* the Commission could not reasonably conclude that the condition described by the City in this case is a disability or impairment which the City might perceive as being a handicap. Majority opinion at 744.

As I read the majority opinion, which now includes the majority's response to this concurrence, majority opinion at 757–764, the majority allows a reinterpreted *American Motors* to survive, limited to its facts.

[3]A class B rating is defined as meaning that the person is qualified for any work with the restriction that there be a back conditioning exercise program before undertaking heavy labor.