MARLENE A. CUMMINGS, Secretary Department of Regulation andLicensing
You have asked me to analyze whether licensing boards have the authority to deny, limit, suspend or revoke the professional license of a person who has a communicable disease. Your inquiry is prompted by the concern that professionals who have a communicable disease may pose a threat to the health of their clients, patients or customers.
It is my opinion that the licensing boards do not have the authority to enact general regulations which would prevent a person with a communicable disease from practicing his or her profession. However, licensing boards do have the authority on a case-by-case basis to revoke, suspend or deny the license of a person who poses a direct threat to the health and safety of other persons or who, by reason of the communicable disease, is unable to perform the duties of the licensed activity.
Sections 111.321, 111.322 and 111.325, Stats., prohibit licensing boards from denying someone a license because they are handicapped. Section 111.32(8) defines a "handicapped individual" as an individual who:
 (a) Has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work;
(b) Has a record of such impairment; or
(c) Is perceived as having such an impairment.
The federal Rehabilitation Act of 1973, which prohibits a federally funded state program from discriminating against a handicapped *Page 224 
individual solely by reason of his or her handicap, contains a similar definition of handicapped individuals. See 29 U.S.C. § 794
(1988) and 45 C.F.R. § 84.3(j) (1987). The United States Supreme Court recently interpreted the act in School Bd.of Nassau County, Fla. v. Arline, 480 U.S. 273 (1987).
In Arline, the Court concluded that a woman with tuberculosis was handicapped within the meaning of the federal act. The Court reached this conclusion largely because the woman's disease substantially limited her ability to participate in major life activities. The Court would not decide, however, whether a carrier of a contagious disease such as AIDS could be considered to have a physical impairment, or whether such a person could be considered handicapped solely on the basis of contagiousness.Arline, 480 U.S. at 282 n. 7. The Court did remark, though, that by amending the definition of handicapped individual to include not only those who are actually physically impaired, but also those who are regarded as impaired, Congress was acknowledging that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from such impairment. Arline, 480 U.S. at 284.
In 1987, after the Arline decision, Congress amended the Rehabilitation Act to state that a handicapped person does not include an individual who has a currently contagious disease or infection and who, by reason of such disease or infection, would constitute a direct threat to the health or safety of other individuals or who, by reason of the currently contagious disease or infection, is unable to perform the duties of the job. Civil Rights Restoration Act of 1987, Pub.L. No. 100-259, 1988 U.S. Code Cong. Admin. News (102 Stat.) 28, 31-32 (to be codified at29 U.S.C. § 706). Thus, the term handicap includes a contagious disease or infection unless the carrier would constitute a direct threat to the public health and safety. In passing the Civil Rights Restoration Act, the Senate rejected an amendment which would have reversed the Arline decision to the extent that individuals with contagious diseases could not be considered handicapped under the 1973 Rehabilitation Act. The amendment was rejected because it would represent "a complete retreat from the principles for which section 504 stands: protection of handicapped individuals from discrimination based not only on the handicap itself, but from irrational fears and prejudice of others. As the Court made clear, Congress did not authorize broad *Page 225 
exceptions such as contagious diseases from the coverage of the law." S. Rep. No. 64, 100th Cong., 2d Sess. 28, reprinted in
1988 U.S. Code Cong. Admin. News 3, 30.
Federal court decisions since Arline and the Civil Rights Restoration Act have specifically found that persons diagnosed with AIDS are handicapped within the meaning of the 1973 Rehabilitation Act. See John Doe v. Centinela, No. CV-87-2514, 1988 U.S. Dist. LEXIS 8401 (C.D. Ca. June 30, 1988); Robertson v.Granite City Com. Unit School D. 9, 684 F. Supp. 1002, 1007 (S.D. Ill. 1988); Chalk v. U.S. Dist. Court Cent. Dist. of California,840 F.2d 701, 704 (9th Cir. 1988); Thomas v. Alascadero UnifiedSchool Dist., 662 F. Supp. 376, 381 (C.D. Cal. 1987). In Doe, an asymptomatic carrier of the AIDS virus was excluded from a federally funded hospital's residential drug and alcohol treatment program. The hospital urged that its blanket policy of excluding AIDS carriers was necessary to protect other patients from a communicable virus. The hospital contended that contagiousness alone does not amount to a handicap under the Rehabilitation Act. The court disagreed, stating that no matter what else Arline may fairly be read to hold, it clearly states that discrimination based solely on fear of contagion is discrimination based on a handicap when the impairment has that effect on others.
In addition to finding that a person is handicapped, it is also necessary to find that a person is "otherwise qualified" in order to receive protection from the Rehabilitation Act. In the employment context, an otherwise qualified person is one who can perform the essential functions of a job. 45 C.F.R. § 84.3(k) (1987). When a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any reasonable accommodation by the employer would enable the handicapped person to perform those functions.45 C.F.R. § 84.12 (1987). In Arline, the Court stated that anindividualized inquiry would be necessary to determine whether a handicapped person is otherwise qualified. If the person is handicapped by a contagious disease, the inquiry should include:
 "[findings of] facts, based on reasonable medical judgments given the state of medical knowledge, about (a) the nature of the risk (how the disease is transmitted), (b) the duration of the risk (how long is the carrier infectious), (c) the severity of the risk (what is the potential harm to third parties) and (d) the *Page 226 
probabilities the disease will be transmitted and will cause varying degrees of harm." Brief for American Medical Association as Amicus Curiae 19.
Arline, 480 U.S. at 288 (insert in original).
Thus, any action taken to revoke, suspend or deny a person's license because he or she has a communicable disease would have to be done on a case-by-case basis. The various federal courts which have reviewed AIDS cases have largely condemned action taken to prevent AIDS carriers from, among other things, teaching, attending classes and receiving health care. SeeRobertson, Chalk and Doe. Therefore, based on federal case law and the federal Rehabilitation Act, any general rule which would prevent a person with a communicable disease from practicing his or her profession would most likely be struck down.
The federal Rehabilitation Act is applicable to the Department of Regulation and Licensing if the department, at any time, receives federal funds, authorized under section 20.165(1)(m). However, even if the department does not receive federal funding it is still likely that Wisconsin courts would reach the same conclusion as federal courts on this issue. As already mentioned, the Wisconsin and federal definitions of a handicapped individual are very similar and therefore there is a high probability that a Wisconsin court would also find that a contagious disease such as AIDS is a handicap. Also, the Wisconsin Supreme Court cited theArline decision with approval in La Crosse Police Comm. v. LIRC,139 Wis.2d 740, 761, 407 N.W.2d 510 (1987). In La Crosse, the Court reviewed Wisconsin's definition of a handicapped individual and concluded that the determination of "what makes achievement unusually difficult" rests not with respect to a particular job, but rather to a substantial limitation on life's normal functions or a substantial limitation on a major life activity. Id. This explanation is identical to the federal definition. Finally, section 111.34(2)(b) states in relevant part that:
 In evaluating whether a handicapped individual can adequately undertake the job-related responsibilities of a particular . . . licensed activity, the present and future safety of the individual, of the individual's coworkers and, if applicable, of the general public may be considered. However, this evaluation shall be made on an individual case-by-case basis and may not be made *Page 227 
by a general rule which prohibits the employment or licensure of handicapped individuals in general or a particular class of handicapped individuals.
Therefore, any action taken by a licensing board will have to comply with the requirements that the Supreme Court laid down inArline regarding the employment of persons with communicable diseases.
Next you ask whether section 227.51(3) gives emergency powers to licensing boards to summarily suspend the license of a professional who has a communicable disease. I do not believe that section 227.51(3), which allows an agency to summarily suspend a license if it finds that public health, safety or welfare requires emergency action, is that broad. It does not grant any additional authority to licensing boards beyond the ability to move in a summary fashion in the case of an extremely imperative emergency. For further discussion of the standards governing summary suspension, I direct you to a recent attorney general opinion addressed to your office. See 76 Op. Att'y Gen. 110 (1987).
Finally you ask whether licensing boards may establish practice restrictions which they find necessary to prevent the transmission of a communicable disease. Since practice restrictions are, in effect, a limited form of suspension, they would have to be made on a case-by-case basis and they would be subject to the same standards that apply to the denial or revocation of a license.
DJH:WHW:LS *Page 228